George vs. Gardner.

John George, plaintiff in error, vs. James Gardner, defendant in error.

1. The foreclosure of a mortgage is a suit, within the contemplation of the Act of March 16th, 1869; and if the instrument was executed before June 1st, 1865, and proceedings to foreclose were not instituted until after January 1st, 1870, they are barred by the provisions of said Act.

2. The Act of 1869 is a general law, and has a general operation throughout the State as to that class of contracts specified in it, and, therefore, does not come within the purview of the 26th section, 1st Article, of the Constitution of 1868.

3. This Act does not impair the obligation of the contract; it only affects the remedy.

4. The plaintiff having an agent in this State in possession of the mortgage, and having control of its collection, the fact that he was a resident of Ireland, will not prevent the statutory bar.

5. The credits on the notes, to secure which the mortgage was given, not being made by the mortgagor, or by any one authorized by him, do not renew the right of action.

6. As to the suggestion of fraud, if there was any evidence of it to prevent the running of the statute of limitations, that was a question of fact for the decision of the Court, under the submission of the parties, and this Court will not interfere.

Statute of limitations. Mortgage. Constitutional law. New trial. Before Judge Gibson. Richmond Superior Court. October Term, 1872.

For the facts of this case, see the decision.

McLaws & Ganahl, for plaintiff in error.

The Act of 1869 does not include liens, certainly not mortgages on realty, because—

1st. The word "action" does not include statutory remedy to foreclose a lien: Code, sec. 4; 4 Ga., 486; Angell on Lim., 73; 8 Ga., 321, as it does not include dower, distress, ousting a tenant, rules vs. sheriffs and other officers, etc.

2d. The Act of 1869 does not refer to liens; so far as it relates to actions ex contractu, it repeals by 2d provision: Code, sec. 2863; 3d, sec. 2864; 4th, secs. 2866–7; 5th, sec. 2871; 6th, sec. 2872. All cases not of this character (i. e.

not set out in the above sections of the Code), are provided for by Act of 1869, and no more; *vide* last section of Act of 1869.

3d. Because if foreclosure of a mortgage lien were within the words it would not be within the spirit of the Act, just as mortgage judgments are not within the dormant judgment Act: 7 Ga., 495; and *sci. fa.*, is not a civil case within the provision of the Constitution requiring all *civil cases* to be brought in the county of the residence of defendant: 10 Ga., 557.

4th. Because the effect and consequences would be absurd: Black's Com., p. 60.

5th. Because such a construction would impair the obligation of the contract: Const. U. S., Art. I, sec. 10; Const. Ga., Art. I, sec. 1; Bronson *vs.* Kinzie, 1 How., 311; Mc-Crackcn *vs.* Haywood, 2 How., 608; Grantley *vs.* Ervein, 3 How., 707; LeRoy *vs.* Crowningshield, 2 Mason, 175, 176; Hardeman *vs.* Downer, 39 Ga., 429.

1st. Did the Act of 1869 include foreclosure of mortgages in language or spirit? We reply—

1st. Acknowledgment and new promise: Angell on Lim., 208, 234.

2d. Payments entered on the written evidence of the debt by the plaintiff or his authority: Code, sec. 2884.

3d. New promise in writing by plaintiff or by his authority after the foreclosure: Code, sec. 2883.

4th. Fraud and estoppel: Code, secs. 3116, 3126; Guerin *vs.* Danforth, 45 Ga., 495.

5th. In this case, neither plaintiff nor defendant were in the State during the whole period of limitation.

Frank H. Miller; W. H. Hull, for defendants.

I. The debt sued for is barred by the statutes of limitation.

1st. The statute of force at the making of the contract, .January 1, 1857, governs as to the contract and new promise: .28 Ga., 310.

2d. This debt should have been renewed by promise in

George *vs.* Gardner.

writing, signed by Gardner or some person by him authorized : Acts February 20, 1854, March 6, 1856, section 25.

3d. Entries of credits in the presence of the maker or person making them do not keep the debt in life : 20 Ga., 94, 22 Ga., 343, 32 Ga., 602, 34 Ga., 245, 36 Ga., 538.

4th. The same defense exists as against a suit on the debt : Code 3888, and the debt is certainly barred by Act of March 16, 1869.

5th. The mortgage itself as a sealed instrument is barred : Section 3, Act March 16, 1869.

II. The exceptions to the limitations in the Code do not apply to cases arising under the Limitation Act of March 16, 1869 1 Kelly, 32, Adam *vs.* Davis, decided August 13, 1872; 46 Ga., 126.

III. No new promise has been made by Gardner, or by any person by him authorized in writing. As to what a new promise must contain, see 6 Ga., 31, 486, 587, 9 Ga., 418, 32 Ga., 602, 36 Ga., 538; but it is insufficient to refer to notes generally: 32 Ga., 119 ; any dispute is a question of fact for the jury: 6 Ga., 21, 486. The Judge acting here as the jury, his finding will not be disturbed: 41 Ga., 437, 32 Ga., 119, 45 Ga., 167, Anderson *vs.* Howard & Sons, decided August 12, 1873. After the statute has run, a debtor's rights become vested, and cannot be affected by legislative action: 41 Ga., 231. The debt being then absolutely barred, January 1, 1870, the question of consideration for future indulgence is excluded.

IV. The offer of Stockton cannot affect Gardner's rights nor bind him.

V. The statutes of limitation confer a legal right, and it is not *fraud* to plead it : 6 Ga., 31.

WARNER, Chief Justice.

At the January term, 1871, of Richmond Superior Court, John George petitioned the Court to foreclose a mortgage made by James Gardner to him on certain real estate described therein as set forth in the record. The mortgage was

executed on the 1st day of January, 1857, to secure the payment of two promissory notes for $3,000 00 each, due at one and two years after date, the notes having the same date as the mortgage, which was duly recorded on the 16th of January, 1857. The following is a copy of the notes with the endorsement and credits thereon :

"$3,000 00.                    AUGUSTA, January 1, 1857.

"Twelve months after date I promise to pay to the order of John George $3,000 00, for value received, with interest from date.        (Signed)        JAMES GARDNER.

"Endorsed:  JOHN GEORGE.

"Received note for the interest to 1st January, 1858, B. B.; received interest to 1st January, 1859, on within, B. B.; received interest to 1st January, 1860, on within, B. B.; received interest on the within note to 1st January, 1861, B. B.; received interest on the within note to 1st January, 1863 ; received on account $500 00, 23d January, 1868; received on account $750 00, May 14, 1870.   Received interest in full to 1st July, 1870—July 18, 1870."

"3,000 00.

"Two years after date I promise to pay to the order of John George $3,000 00 for value received, with interest from date.        (Signed)        JAMES GARDNER.

"Augusta, January 1st, 1857.

"Endorsed:  JOHN GEORGE.

"Received interest to 1st January, 1859, on within, B. B.; received interest to 1st January, 1860, on the within, B. B.; received interest on the within note to 1st January, 1861, B. B.; received interest to 1st January, 1863, on within note, B. B.; received on account within $250 00, March 18th, 1869; received, Augusta, 24th May, 1869, $250 00 on account within; received, Augusta, 6th June, 1870, $500 00 on account within note; received, on 27th July, 1870, on account interest, $326 41; September 7, 1870, received $326 41; received interest to July 1, past."

At the trial of the case, the following facts were agreed to and submitted to the Court for its judgment thereon:

"John George became a citizen of the United States September 21st, 1842, and resided in Augusta until May ..., 1854, when he removed to Ireland, where he has ever since resided. He visited Georgia at the time of the date of the mortgage, January 1st, 1857, and then sold and conveyed the mortgaged premises to James Gardner, describing himself in the deed as of Richmond county. Gardner paid all the purchase money but $6,000 00, and for this sum executed two notes for $3,000 00 each, payable, one at one year and the other at two years from January 1st, 1857, and the mortgage on the premises, the foreclosure of which is now being resisted. The notes were not paid at maturity, but the interest was paid at stated intervals and indulgence asked for the principal, by Gardner, and granted by George. After the sale and mortgage, George returned to Ireland, and left with Bernard Bignon, of Augusta, the unpaid notes. He returned to Georgia in 1859, and then went back to Ireland, where he has since resided, never having removed the notes from Bignon's hands. Bignon collected the interest for George, and managed his other property in Georgia, and returned them for taxation, to 1867, inclusive, when, being informed the debt was not liable for taxation under the laws of Georgia, he ceased to do so. On the 28th day of October, 1863, James Gardner sold the mortgaged premises to George T. Barnes, John L. Stockton, and others, as tenants in common—Gardner agreeing to pay off the mortgage. These parties carried on the business of the Constitutionalist newspaper, under the name of Stockton & Company. Stockton and Gardner, in the course of time, bought out the interest of all the other partners, except Lawrence D. Lallerstedt, and with him owned the mortgaged premises until December 22d, 1870. The parties who purchased, bought with full notice of the mortgage, and subject thereto, for the unpaid purchase money held by George, and Gardner in his deed to them having covenanted to pay it off.

"James Gardner removed to New York April 1st, 1867, and resided there until October 17th, 1870, when he returned to Georgia, occasionally visiting Georgia in the *interim;* and on the first day of February, 1871, became editor again of the Constitutionalist newspaper, which was published and its business carried on in the mortgaged premises.

"John L. Stockton & Company, the managing partner of the firm of Stockton & Company, acting for Gardner, paid the interest on the notes, from time to time, to Bernard Bignon. On the 18th of July, 1870, he paid the interest to 1st July, 1870, in full, on one note; on the 27th of July, 1870, he paid part of the interest to July 1st, 1870, on the second note; and on the 7th of September, 1870, he paid the interest on the second note to July 1st, in full. When these payments were made of interest to Bignon, Stockton took no receipts, but instructed Bignon to indorse the receipts of the same on the notes, which was done by Bignon in each case, in Stockton's presence, at the time of payment, by his direction, at his desk, and under his inspection.

"In the month of March, 1870, the interest on the notes being greatly in arrears, John L. Stockton, of Stockton & Company, then composed of John L. Stockton, L. D. Lallerstedt, and James Gardner, owners of the mortgaged premises, proposed in writing as follows:

"'We propose to pay Mr. George $700 00 cash, and the balance of the interest to July 1, 1870, in three equal payments, on May 1st, June 1st, and July 1st, and to pay the principal in January or February next.

                                    Stockton & Company.'

"This proposal was submitted to George by Bignon, who subsequently verbally informed Stockton that it was agreed to by John George. Seven hundred and fifty dollars was paid on May 14th, 1870, by Stockton & Gardner, and the rest of the interest at the time set forth above. The principal being demanded of Gardner, who refused at that time, the mortgage was placed in the hands of McLaws & Ganahl for foreclosure,

George *vs.* Gardner.

and rule *nisi* taken at the January term, 1871, and copy of rule served on James Gardner, when engaged on the premises of the mortgaged property as editor of Constitutionalist newspaper, and the business carried on as before, in, the name of John L. Stockton & Company, and by John L. Stockton and Frank M. White.

"James Gardner became insolvent in New York, October 31st, 1870. Prior to that time, October 24th, 1870, he executed to Thomas A. Hoyt, his partner, a blank mortgage on his three-fifths interest in the Constitutionalist newspaper, including the mortgage premises, which Hoyt filled up to the amount of $30,000 00; which sum is larger than the value of the whole mortgage property, and far exceeded the interest of said Gardner, but which is contested by Gardner, as illegal and void, because it was not used or filled up as understood with him by his partner, Hoyt.

"Thereafter, to-wit: on the 22d December, 1870, James Gardner gave a deed to his interest in the Constitutionalist, including the premises thus incumbered by John George's mortgage, and the others, to his brother-in-law, Frank M. White, a citizen of and resident of Memphis, Tennessee, who, as purchaser, had notice of the value of the property, and of the incumbrance, and the denial of the correctness of the Hoyt mortgage. Said deed was recorded January 23d, 1871, in Richmond county.

"The Constitutionalist newspaper, on the premises, continued to be published as heretofore, under the name of Stockton & Company, by Stockton and White, they having purchased Lallerstedt's interest, March 14th, 1871.

"An offer was made in 1861 or 1862, by Gardner, to pay the note in Confederate money, to Bernard Bignon, who, not being authorized to receive it, and not being able to communicate with George, refused to receive it.

"John L. Stockton was, during the whole period of the management of the Constitutionalist by the former name of Stockton & Company, the managing partner of the Company.

"The within agreed upon as facts, subject to all exceptions thereto for irrelevancy and inadmissibility, December 21st, 1872. (Signed) FRANK H. MILLER,
Attorney for Gardner.
McLAWS & GANAHL,
Attorneys for George."

Gardner, the mortgagor, pleaded the statute of limitations of 1869 in bar of the foreclosure of the mortgage. The Court sustained the plea, and dismissed the plaintiff's petition and rule *nisi* for foreclosure of the mortgage as prayed for, and the plaintiff excepted. The 3d section of the Act of 1869 declares that all actions on bonds or other instruments under seal, which accrued prior to 1st of June, 1865, not now barred, shall be brought by 1st January, 1870, or the right of the party plaintiff or claimant, and all right of action for its enforcement shall be forever barred. The 6th section of the Act further declares that all other actions upon contracts, express or implied, or upon any debt or liability whatsoever, due the public or a corporation, or a private individual or individuals, which accrued prior to the 1st June, 1865, and are not now barred, shall be brought by 1st January, 1870, or both the right and the right of action to enforce it, shall be forever barred. This Act was passed the 16th of March, 1869, and gave the plaintiffs nine months and a half thereafter, within which they must institute their suits or actions, on the class of debts or claims therein specified, or be forever barred. There can be no doubt, we think, as to the intention of the General Assembly in the enactment of this statute. With its policy or expediency, the Courts can have nothing to do; their plain duty is to enforce it, if it be a valid constitutional law, though its policy or expediency, as applicable to the case before us, is not very apparent. By the laws of this State, a mortgage is only a security for the payment of the debt, and the plaintiff now seeks to enforce its payment by the foreclosure of his mortgage. The mortgage sought to be foreclosed, is an instrument under seal, and is dated prior to the 1st of June, 1865, and the plaintiff's right to foreclose it

George *vs.* Gardner.

had accrued at the time of the passage of the Act of 1869, but was not then barred, and would not have been for several years, had it not been for that Act, which declared that if the plaintiff did not prosecute his remedy by suit or action to enforce it by the 1st of January, 1870, he should be forever barred.

The plaintiff did not institute any proceeding in the proper Court to foreclose the mortgage until January, 1871. The argument for the plaintiff here, however, is, that the proceeding to foreclose a mortgage lien under the provisions of the 3886th section of the Code, is not a suit or action, as contemplated by the Act of 1869, and, therefore, not within its provisions. This argument, on examination, will be found to be more specious and plausible than sound. The proceeding specified in our Code for the foreclosure of a mortgage on real estate is a simple, cheap substitute for a bill in equity for that purpose, but it is, nevertheless, a suit or action, and the plaintiff must petition the Court as in other ordinary suits or actions.

Ordinary suits in the Superior Court are commenced by petition to the Court: Code, 3256. Where the petition, in either case, is filed in the clerk's office, the date of the filing thereof is the commencement of the suit or action, as well a petition to foreclose a mortgage as any other petition for a remedy to enforce a right, or to redress a wrong. An action as defined by our Code, is merely the judicial means of enforcing a right, 3186. An action may be against the person, or against the *property*, or *both*, 3187. See, also, section 2217. The petition to the Court to foreclose the mortgage was an *action* against the mortgagor and the property mortgaged, as contemplated by the Act of 1869, and is within the provisions of that Act.

The Act of 1869 is a general law, and has a general operation throughout the State, as to the class of contracts specified in it, the private rights of no particular individual are *specially* varied or affected by it, as contemplated by the 26th section of the first Article of the Constitution of 1868. This construction of the Act of 1869 does not invade or impair the

obligation of the plaintiff's *contract* and thereby render the Act unconstitutional, it only affects his *remedy* on that contract, that is to say, it prescribes the period of time within which he should enforce his remedy thereon in the Courts of the State. In the opinion of the General Assembly, nine months and a half, was a reasonable time within which plaintiffs should have their remedy to enforce the class of debts or claims specified in the Act, and we cannot say that the time was so short or unreasonable as to make the Act unconstitutional: Bacon *et al. vs.* Howard, 20 Howard's Reports, 23; McElmyle *vs.* Cohen, 13 Peters' Reports, 312; Townsend *vs.* Jemison, 9 Howard's Reports, 407. It is true, the plaintiff was resident in Ireland, but he had an agent here looking after this particular claim who had the possession and control of the papers appertaining to it, and was doubtless entrusted with its management and collection, by the plaintiff.

In regard to the credits on the notes, the same were not made by the mortgagor, either in his own handwriting or subscribed by him, or by any one authorized by him, within the true intent and meaning of the 2883d and 2884th sections of the Code: *Green vs. Hall*, 36 *Georgia Reports*, 538. The mortgage was executed by Gardner alone, and the action to foreclose it was instituted against him as mortgagor to show cause why it should not be foreclosed, and not against Stockton & Company, who were not parties to the mortgage. As to the suggestion of fraud, if there was any evidence of it to prevent the running of the statute, that was a question of fact for the decision of the Court, under the submission of the parties, and the Court having rendered its judgment on the evidence before it, this Court will not interfere to control it.

In our judgment, there was no error in the Court below in holding and deciding that the plaintiff was barred of his right of action to foreclose his mortgage against Gardner, the mortgagor, under the provisions of the Act of the General Assembly, passed on the 16th of March, 1869, on the statement of facts disclosed in the record.

Let the judgment of the Court below be affirmed.