JAMES C. FREEMAN *et al.*, plaintiffs in error, *vs.* ALBERT D. CRAVER, administrator *de bonis non, et al.*, defendants in error.

(WARNER, Ch'ef Justice, being interested in the result of the litigation, did not preside.)

1. A consent decree, after full execution and many years of acquiescence, ought not to he disturbed.
2. Ignorance of fraud which, by the use of ordinary diligence, might have been discovered in due time, will not hinder the statute of limitations from running. Enough was known to prompt inquiry; there was a clue.

Equity. Decree. Statute of limitations. Before Judge TOMPKINS. Spalding Superior Court. August Term, 1875.

On December 30th, 1874, Craver, as administrator *de bonis non* upon the estate of Peter Farrar, deceased, and the heirs-at-law of said estate, filed their bill against Freeman and Miles G. Dobbins, making, in brief, this case: Farrar died in October, 1864, leaving a large estate of realty and personalty; one Josiah Sheffield became administrator, but was removed at the June term, 1872, of the court of ordinary of Spalding county, on account of mal-administration, etc.; Craver became administrator *de bonis non* on January 5th, 1874.

Whilst Sheffield was administrator, to-wit: on January 3d, 1867, he filed his bill against Freeman for an account and settlement of certain cotton transactions and speculations made and entered into by him and Farrar as partners. Freeman answered this bill at the August term, 1869, of Spalding superior court, and a consent decree was then rendered for the complainant for $1,500 00. On the day of its rendition the decree was paid off in full. Copies of the proceedings in that case were attached.

Since the rendition of said decree complainants have been informed, and so charge, that while the copartnership existed between Farrar and Freeman, one Dobbins was also a partner. This fact was never known to Sheffield, and therefore Dobbins was not made a party defendant to the hereinbefore recited

bill. Complainants only received this information some twelve or fourteen months before the filing of this bill. Complainants are informed, and believe, that Sheffield was greatly mistaken as to the quantity of cotton held by Freeman, Dobbins & Farrar at the date of the death of the latter. Sheffield alleged in his bill that Freeman had taken possession of some seventy thousand pounds, or other large quantity, of ginned cotton, when in truth, from the statement of facts that has been made to complainants "within a few months past," there were about five hundred bales of cotton averaging five hundred pounds to the bale, purchased by Freeman & Farrar, and about three hundred and sixty bales, same general weight, purchased by Farrar & Dobbins. In all of this cotton Farrar was interested as a partner to the extent of one-third thereof. It was worth forty-five cents per pound, or, in the aggregate, $193,200 00. The greater part of the cotton bought by Freeman & Dobbins was purchased during the years 1862 and 1863; some of it was bought in the year 1864, but during most of the latter year Farrar was absent from home in the military service of the state. During this period almost the entire management of the cotton business was in the hands of Dobbins & Freeman. The cotton was purchased as an investment, to be held until the close of the late war, to be then sold and the proceeds divided. The larger portion of this cotton was, by contract, left with the sellers to be taken care of and to be delivered on call. Thus it was not delivered until the spring or summer of the year 1865, after the death of Farrar. Freeman & Dobbins sold the same and appropriated the proceeds to their own use, except the sum of $1,500 00 paid on the aforesaid decree. Other property was appropriated in the same way by the defendants, enumerating it.

A few weeks after the death of Farrar, Freeman & Dobbins went to the house of Sheffield, the former administrator, and by false and fraudulent representations, induced him to sell to Dobbins the interest of his intestate in the cotton on hand, for $26,000 00 in Confederate money, falsely stating

that his interest amounted only to some thirty-five thousand or forty thousand pounds.   At the time of this fraudulent transaction Freeman & Dobbins had in their hands $40,000 00 of Confederate treasury notes belonging to the estate of Farrar, out of which they made the payment to Sheffield of $26,000. Sheffield was a weak-minded man, credulous and easily deceived, and from excessive dissipation, easily imposed upon. Freeman, knowing his weakness, together with Dobbins, took advantage of him as aforesaid.   Complainants charge that such sale was without authority of law.   As an inducement to Sheffield to dispose of the interest of his intestate in such cotton, Freeman falsely informed him that he was about to make the same kind of trade with Dobbins.

Freeman and Dobbins obtained other lots of cotton in which Farrar was interested, and for which they have never accounted to his estate.

The consent decree already alluded to, was fraudulently obtained by unlawful concealments on the part of Freeman & Dobbins, from said Sheffield, as to the amount of cotton really on hand in which the estate of Farrar was interested.   It therefore ought to be set aside on this ground, and also because Dobbins was not a party thereto.   The case should be reheard with Dobbins before the court, in order that all the matters complained of may be inquired into.

Complainants pray that Freeman & Dobbins may be required to account for all the property of Farrar, deceased, which they have in their hands.   Waiving all discovery, they pray the writ of subpœna.

Complainants subsequently filed an amendment in which they alleged that they only acquired knowledge of the fraud perpetrated by Freeman & Dobbins on them and on the former administrator, Sheffield, a few months before the filing of their original bill, and that they immediately " set about taking legal steps for the enforcement of their rights."

The defendants demurred to the bill upon the following grounds :

1st. Because it contained no equity.

2d. Because the allegations of fraud are too general.

3d. Because any relief for the matters complained of is barred by the statute of limitations.

4th. Because the subject matters complained of are *res adjudicata,* being covered by the decree in the bill set forth.

The demurrer was overruled and defendants excepted.

HUNT & JOHNSON, for plaintiffs in error.

J. M. CAMPBELL, for defendants.

BLECKLEY, Judge. .

1. The consent decree rendered and fully performed in 1869, put an end to the controversy as to all matters embraced in that bill. After such length of acquiescence it was quite too late to re-open it without some better excuse than is shown in the new bill. Such a decree is not altogether as subject to review as one not founded on consent: 7 *Georgia Reports,* 110. The new bill does not allege any specific fraudulent act or practice whereby consent on the part of the complainant was brought about to the decree which was rendered.

2. The new bill, as to matters not embraced in the old, is clearly barred if not saved by fraud and the want of knowledge thereof. Even granting that fraud is sufficiently alleged, which, considering the loose frame of the bill, is a large concession, it ought to have been discovered long ago by those representing or interested in Farrar's estate. It is impossible to read the bill without being struck with the absence of explanation why the facts were not ascertained in due time. Reasonable diligence, we think, would have lead to their discovery. Enough was known from the start to prompt inquiry. It is not like a case where there was no clue. The demurrer ought to have been sustained.

Judgment reversed.