## AUSTIN *et al. vs.* RAIFORD *et al.*

1. Where the security on the bond of an administrator, as agent for the administrator, held certain property of the estate, and after the death of his principal accounted and settled fully and without fraud or collusion with the administrator *de bonis non*, the general distributees are bound, and cannot hold such security to account directly to them.

2. The discharge of an administrator from liability on his bond discharges also his securities.

3. Where a right of action accrued against an administrator and his surety prior to 1865, and no suit was brought until October, 1875, the action was barred.

(*a.*) Fraud to relieve a case from the bar of the statute must be such as involves moral turpitude. Mere errors or inaccuracies in accounts, without more, is not sufficient.

Administrators and Executors. Principal and Surety. Non-suit. Statute of Limitations. Before Judge WILLIS. Muscogee Superior Court. May Term, 1881.

Reported in the decision.

THORNTON & GRIMES; BLANDFORD & GARRARD, for plaintiffs in error.

D. H. BURTS; PEABODY & BRANNON, for defendants.

SPEER, Justice.

This was a bill filed in Muscogee superior court, on October 4th, 1875, in which the complainants show that their father, A. B. Austin, died in Chattahoochee county, Ga., in the fall of 1860, leaving a large estate consisting of negroes, lands, stock of various kinds, cotton, cash and debts due the estate.    That on December 3d, 1860, one John Bonnell became administrator, with W. W. Shipp his only security.    That the negro property was divided among the heirs, and that on December 20th, 1860, the perishable property sold for $2,959.50.    That on first Tuesday in October, 1861, the real estate was sold by the administrator, and was bought by W. W. Shipp, his security, for $3,401.00.    That Bonnell made return June 22d, 1861, showing receipts of $1,814.96 and disbursements of $1,996.27.    That Bonnell made return May 10th, 1862, showing receipts of $3,464.06, and disbursements of $603.59.    That Bonnell, the administrator, went to the war, and that Shipp, the security, took entire control and management of the property.    That Bonnell died in Richmond, Va., July 9th, 1864.    That said estate from that date to July 30th, 1866, was entirely unrepresented.    That the same remained in the possession of Shipp, the security, and purchaser of the real estate. That on the last mentioned date, July 30th, 1866, E. G. Raiford, then of Chattahoochee county, but at the time of the filing of this bill, a citizen of Muscogee county, was appointed administrator *de bonis non* of said estate, with W. W. Shipp his security.    The bill prays for an account and settlement, and a discovery as to the amount of said estate in the hands of Shipp, and what amount in the hands of Raiford, and that each may be decreed to pay the heirs whatever amount may be coming to them.

Raiford, by his answer, admits that Shipp was his security, and as such he (Shipp), in the fall of 1866, turned over

to him as assets of the estate, some notes, amounting to $986.39, most of which were insolvent, and certain certificates of money to buy Confederate bonds, amounting to $700.00, that he has paid out all moneys collected, appending his return as part of his answer.

Shipp answered that he was security for both Bonnell and Raiford, as charged ; that as agent of Bonnell he held the assets until July, 1864, when Bonnell died. When Raiford was appointed in July, 1866, he turned over to Raiford all the assets in his hands, and that in the summer of 1866 he bought out most of the heirs for small sums, $40.00 or $50.00 each, and attaches their receipts as exhibits to his answer.

Complainants amended their bill by alleging that Shipp purchased the lands of the estate for $3,401.00, and he has never paid for the same to the administrator or either of them. Also, Shipp, in obtaining the interest of some of the heirs, made false and fraudulent representations, that the whole of the estate was lost by the results of the war, and they, relying upon these statements, and being ignorant of the facts, sacrificed their interests by selling to him.

Shipp, in his answer to the amended bill, replied that there were losses to said estate from the war, and denied making fraudulent or false representations to obtain the transfers of complainants' interest.

Upon the trial complainants introduced in evidence the answer of Raiford, which set forth his appointment as administrator *de bonis non ;* a settlement with Shipp as security on Bonnell's bond, and his full accounting with the estate for all sums collected by him. They also swore Raiford as a witness, who testified of his full settlement with Shipp, and of his full administration of all assets in his hands, as appeared by his returns, and also of Shipp's purchase of the interest of some of the heirs.

The testimony of some of the complainants was also read, testifying that they had received nothing from the estate

since the war, and denying they had sold their interests, etc.

Mrs. Bonnell denies the $400.00 charged to her came from the estate, but was for land sold by her husband to Shipp. That Shipp alone managed the estate after her husband went to the war.

Horn and Thompson, who married two of the complainants, testified Shipp represented the estate was worth but little or nothing by the results of the war, and they were thus induced to transfer their interest to him.

Copies of inventories and appraisement, sale bills and returns of the estate were also offered in evidence by complainants.

Defendant, Shipp, pleaded by way of defence, the purchase of their interest in the estate from certain heirs, and also, he relied upon the statute of limitations of 1869, and the statute of ten years, and offered no evidence. After the evidence closed, defendants moved to non-suit the cause, which motion the court granted, and complainants excepted.

1, 2. The record does not disclose upon what ground the court non-suited the complainants' cause, or more properly speaking, dismissed complainants' bill. But if the judgment was right on any ground, as shown by the record, it should be affirmed.

We presume it will not be insisted that there should have been any recovery as to Raiford. By his return and his evidence, introduced by complainants, it is clear he had fully administered the assets that came to his hands as administrator *de bonis non;* and there was no evidence to contradict it. His discharge operated to the discharge of Shipp, the security. But his testimony established the further fact, that he, as administrator *de bonis non*, had a full settlement with Shipp (who held the assets of the estate as security of Bonnell, deceased), of all that were unadministered in his hands, and this he had a right to do. See Code, §§2514-15 ; 60 *Ga.*, 658.

The returns made by Bonnell, as administrator, and by Raiford, administrator *de bonis non*, put in evidence by complainants, both established the fact that the estate had been fully administered, except as to the insolvent debts, which were returned as such by the administrator, and the return approved by the ordinary. What was the legal effect of the settlement had between Shipp, the security, and Raiford, the administrator *de bonis non*, as to Shipp's liability on his bond as security for Bonnell? This court held, in 63 *Ga.*, 369, that, "after the representatives of a deceased co-executor, who died testate, has duly accounted with the survivor without fraud or collusion, the general legatees are bound, and cannot hold said representative to account over directly to them." To apply this principle, for by our statute the same rule applies both to executors and administrators, if Raiford, the administrator *de bonis non*, has had a full accounting with Shipp, who, as security, represented Bonnell, without fraud or collusion, then these complainants can no longer hold Bonnell accountable directly to them. This full accounting between Shipp and Raiford, if without fraud or collusion, precludes the complainants from holding Bonnell further to account, and if Bonnell, the administrator, is not liable, neither could the security be held responsible after this full settlement without fraud or collusion.

3. But apart from this view of the case, what was the effect of the plea of the statute of limitations filed by the defendant?

The death of the intestate occurred in 1860. The cause of action of these complainants, as against Bonnell, the administrator, and Shipp, his security, accrued prior to 1st June, 1865, and this being so, their rights were barred by the act of 1869, unless they could show, in the management of said estate, fraud and corruption on the part of the administrator. 62 *Ga.*, 123, 574.

We have examined with care both the charges and

evidence submitted, and cannot see any fact or circumstance that even tends to show fraud or corruption on the part of this administrator. We admit that this is a question for the jury. But in the absence of all evidence on this point, there was no issue of this kind for the jury to pass upon. A mere mistake in the addition of the returns on the record, or irregularity, would not be such fraud or corruption as is contemplated by this exception in the statute. It must be such "fraud and corruption" as imputes moral turpitude to the conduct of the administrator; otherwise he can claim the exemption from liability to a suit that the act of 1869 secures to him against causes of action prior to 1st June, 1865, unless suit was brought thereon by 1st January, 1870.

In both views of this cause, whether the complainants' bill was dismissed from the want of evidence to make these defendants' liable, or whether, for the reason that complainants were, under the proof, barred by the act of 1869, we are of opinion that the judgment of the court, dismissing the bill, was right. We would not be understood as holding that, where even a *prima facie* case is made in behalf of the plaintiff, the court should award a non-suit at law or dismiss a bill in equity. But if the evidence is such that, admitting all the facts proved and all reasonable deductions from them to be true, the plaintiff, on all the proof, ought not to recover, then the cause should be nonsuited or dismissed. 15 *Ga.*, 491. Here the evidence showed that the proceeds of the sale of this land had been paid to complainants by the administrator, and that all the other assets from the returns had been duly administered and accounted for; this proof was made by the complainants, and there being no conflict in the evidence, nor fraud or corruption proved in the management of the estate, we think the cause of action was not sustained by the proof; but, also, that the act of 1869 barred the complainants.

Let the judgment be affirmed.