*Henry C. Roney,* for plaintiff.
*C. Henry Cohen* and *R. R. Hicks,* for defendant.

---

MAXWELL, administrator, *v.* WALSH, executrix.

Mere constructive fraud will not prevent the bar of the statute of limitations from attaching to a claim growing out of a payment, by mistake, of a sum of money in excess of that to which a creditor of the person making payment was entitled; and especially is this true where the latter not only neglected to use diligence to acquaint himself with the actual amount of his indebtedness, but was guilty of laches in not sooner discovering the mistake under which he and his creditor acted.

Argued February 23,— Decided March 19, 1903.

Equitable petition.   Before Judge Brinson.   Richmond superior court.   April 25, 1902.

*Hamilton Phinizy* and *E. B. Baxter,* for plaintiff, cited, on mistake relievable in equity: Civil Code, §§ 3973–4; 32 *Ga.* 181; 46 *Ga.* 652; 82 *Ga.* 520; 89 *Ga.* 629; 2 Pom. Eq. Jur. §§ 856, 871.   Statute of limitations suspended: 29 *Ga.* 673; 92 *Ga.* 719; 106 *Ga.* 320; 11 *Ga.* 174; 12 *Ga.* 599; Civil Code, § 3983; 35 N. E. 1065; 12 Allen, 333; 2 Y. & C. 58; 4 Ch. Div. 845, 860; 48 N. Y. 193; 27 Ky. 75; 29 Ky. 338; 30 Ky. 455; 21 Ky. 373; 51 Ky. 269; 67 Ky. 635; 79 Ky. 470; 53 S. W. 412; 30 Neb. 385; 31 Tex. 334; 35 S. W. 909; 52 S. W. 1046; 2 Md. Ch. 370; 127 Ala. 411; Story's Eq. Jur. 1521 a.

*C. H. Cohen,* for defendant, cited, beside the cases referred to in the opinion: Civil Code, § 3785; 28 *Ga.* 30, 38; 60 *Ga.* 449; 69 *Ga.* 553; 94 *Ga.* 484; 101 *Ga.* 594; 107 *Ga.* 810; 112 *Ga.* 273; 19 Am. & Eng. Enc. L. 248, 250.

SIMMONS, C. J.   On August 8, 1900, Fannie T. Maxwell, as administratrix of the estate of John L. Maxwell, brought an equitable petition against Anna Bell Walsh, as executrix of the estate of Patrick Walsh, wherein the following facts were set forth:   For

many years prior to his death, John L. Maxwell was the agent of Patrick Walsh, and, as such, was charged with the management of many of his business affairs and property interests. " In connection with his said agency, it was his duty to make and he did make frequent collections and disbursements of the funds of the said Walsh, and there thus arose between him and the said Walsh a current account consisting of numerous items of credit and debit." Upon the death of Maxwell, the plaintiff was duly appointed and qualified as administratrix of his estate. Subsequently, during the year 1892, " Walsh caused to be prepared a statement of the account arising, as indicated above, between him and the said Maxwell," according to which his estate was " indebted to the said Walsh in the sum of $6,361.19," and this " account was presented to petitioner as a claim against the said Maxwell's estate." When demand was made upon her " for the payment of this claim, the said Walsh stated to petitioner that the account submitted to her had been prepared by an expert and competent accountant, who had made a thorough investigation of the matters therein contained, and that the same was correct, and he swore to the same as correct; but he agreed, at petitioner's personal solicitation and upon personal considerations, to accept one half of said demand and to give the estate of said Maxwell a full discharge and acquittal." She was, at that time, " entirely unfamiliar with the details of the business relations between her said husband and the said Walsh, . . had perfect confidence in " him, and " there was nothing to put her on notice that this claim was not substantially correct." Petitioner " ascertained that said account had been examined and said statement made by a competent bookkeeper, as stated by said Walsh, and . . she thereupon paid to the said Walsh, upon the advice of competent counsel, in settlement of said balance, the sum of $3,180.59." This payment was made in 1892. Walsh died on March 17, 1899. Some eighteen months prior to the filing of her petition " she was led to suspect that certain gross inaccuracies existed in said Walsh's said claim," and accordingly " employed an expert accountant to investigate the matter fully." After an investigation covering a period of many months, she ascertained that the account rendered her was incorrect, in that it contained a charge against Maxwell of $1,800, for money which never went into his hands; another item of $200, with which he should not have been charged; and a

third item of $1,260, which should have been only $425, besides other erroneous charges against him. In settlement of this account, petitioner gave to Walsh "fifteen shares of Augusta and Summerville Land Co. stock, of the value of $3,180.59," whereas all that was really due to him by the estate of Maxwell was $458.20. Petitioner " is unable to explain the aforesaid errors in said Walsh's statement rendered her ; . . he was in a far better position to ascertain the truth as to said matter than she was," and "she was compelled to rely, and did rely, upon him to render to her a just demand against her said husband's estate." By reason of the settlement by her of this account, in ignorance of the errors therein above specified, his estate has " suffered great financial loss," and this settlement operated as, and "amounted to, a legal fraud upon her as administratrix of the said estate, though she does not charge, nor does she believe, that said errors were known to said Walsh." The defendant was appointed executrix of his estate on the 3d day of April, 1899, and, as such, is liable to account to petitioner for the fifteen shares of stock delivered to Walsh, as aforesaid, or the value of the same, to the end that a true and just accounting may be had between his legal representative and petitioner.

A demurrer was filed to the plaintiff's petition, based on the ground that the demand she sought to enforce was barred by the statute of limitations, and that she failed to allege in her petition any facts taking the case out of the operation of that statute. The demurrer was sustained, and she excepted.

Stripped of all refinements of pleading, the case she presents is simply this : As the administratrix of her husband's estate, she was called upon by Walsh to settle a claim he held against it — a claim which he honestly believed to be just, due, and unpaid. He stated to her that the account rendered " had been prepared by an expert and competent accountant." This statement she found, upon inquiry, to be true. Walsh may have been "in a far better position to ascertain the truth " as to how accounts stood between himself and Maxwell; yet, for aught that appears, she had as good an opportunity to inform herself as to this matter as administratrix ever had, and ought to have performed her duty in the premises. She did not undertake to do so, but, notwithstanding she was " entirely unfamiliar with the details of the business relations between her said husband and the said Walsh," chose to rely upon the re-

port made to him by the accountant he had employed to investigate the business dealings between himself and Maxwell, the agent, and ascertain the true amount of Maxwell's indebtedness to him. At the earnest solicitation of the plaintiff, and upon purely personal considerations, Walsh, in a spirit of liberality, agreed with her " to accept one half of said demand, and to give to the estate of said Maxwell a full discharge and acquittal." This occurred in 1892. Walsh died in 1899, without any intimation that the accountant above referred to had committed any mistake with reference to the matter, and without opportunity to himself investigate and determine how accounts really stood between himself and Maxwell at the date of his death. Not until after Walsh was dead did the plaintiff make any effort to ascertain whether or not his claim against the estate of her husband was correct as to amount. Then, for some reason of which she fails to give even a hint, she was for the first time " led to suspect that certain gross inaccuracies existed in said Walsh's said claim." An expert accountant, whom she employed " to investigate the matter fully," reported to her that Maxwell had been improperly charged with divers sums of money which never actually went into his hands. She is now " unable to explain the aforesaid errors in said Walsh's statement rendered her," save upon the theory that this accountant was more expert or more competent than was the accountant whom Walsh employed seven years before, when presumably there was a better opportunity to make a thorough and exhaustive investigation into the status of affairs. Which of these two accountants arrived at the correct conclusion as to how accounts stood between Walsh and his agent in the early part of 1892 is the sole issue which the plaintiff seeks to have a jury pass upon. And, it is to be noted, she does not in fairness offer, as a condition precedent to being allowed to repudiate the settlement with Walsh into which she voluntarily entered, to account to his estate for the full amount of his claim, in the event it should be made to appear that her accountant, and not his, fell into error. Nor does she offer any excuse whatever for her laches in not sooner taking steps to ascertain the truth with regard to the correctness of Walsh's claim against the estate she represented. Nothing has transpired since her settlement with him to suggest the propriety of, or render more easy, an investigation into the affairs of her decedent, so far as his business dealings

with Walsh were concerned. By tardily taking action after his death, she simply found out what she might as readily have ascertained at the time he presented his claim in 1892. It is not the province of a court exercising equity jurisdiction to relieve one guilty of gross laches against the consequences of his own folly and inexcusable lack of diligence in attending to his affairs. Clearly, a court of equity can not undertake to ignore or override the statute of limitations, where no good and sufficient excuse appears for non-action during the period prescribed by that statute as the time within which both the just and the unjust alike must act, if at all.

There is no pretense that Walsh committed any actual fraud upon the plaintiff; but, on the contrary, it is alleged merely that the settlement had between them in ignorance of the errors in the account rendered by him "amounted to a legal fraud upon her as administratrix." As was expressly ruled in *Downs* v. *Harris*, 75 *Ga.* 834, "Constructive fraud will not prevent the bar of the statute from attaching." The present case falls squarely within the rule laid down in *Austin* v. *Raiford*, 68 *Ga.* 201, wherein it was held that "Fraud to relieve a case from the bar of the statute must be such as involves moral turpitude. Mere errors or inaccuracies in accounts, without more," will not suffice. See, also, *Anderson* v. *Foster*, 112 *Ga.* 270, 273. Even in cases of fraud such as "will prevent the statutory bar from attaching until it is discovered, there must be reasonable diligence on the part of the plaintiff to discover and detect the fraud." *Marler* v. *Simmons*, 81 *Ga.* 611, cited approvingly in *Kirkley* v. *Sharp*, 98 *Ga.* 487. "Ignorance of fraud which, by the use of ordinary diligence, might have been discovered in due time, will not hinder the statute of limitations from running." *Freeman* v. *Carver*, 56 *Ga.* 161. There was in the case now before us an abundance of ignorance, but the element of ordinary diligence was entirely wanting, as was also that of actual fraud. To hold, under such circumstances, that the plaintiff was entitled to the relief sought, would involve an utter disregard of the statute of limitations and the salutary rule of equity which discountenances laches.

*Judgment affirmed. By four Justices. Lamar J., disqualified.*