UNITED STATES FIDELITY AND GUARANTY COMPANY
*v.* TOOMBS COUNTY.

No. 12637.   FEBRUARY 16, 1939.

*Sharpe & Graham, T. Ross Sharpe,* and *G. H. Williams,* for plaintiff.

*R. Lee Moore* and *Dave M. Parker,* for defendant.

*Memory & Memory, John M. Slaton,* and *C. B. Conyers,* for persons at interest, not parties of record.

GRICE, Justice. ■ A long line of authorities supports the statement made in the first headnote: Code, §§ 92-3808, 92-3809; *Walden* v. *County of Lee,* 60 *Ga.* 296; *Price* v. *Douglas County,* 77 *Ga.* 163, 169 (3 S. E. 240); *County of Pulaski* v. *Thompson,* 83 *Ga.* 270 (9 S. E. 1065); *Hobbs* v. *Dougherty County,* 98 *Ga.* 574 (25 S. E. 579); *Roberts* v. *Dancer,* 144 *Ga.* 341 (87 S. E. 287); *McWhorter* v. *Chattooga County,* 154 *Ga.* 289 (114 S. E. 203); *Palmer* v. *Burke County,* 180 *Ga.* 478 (179 S. E. 344); *Lamar County Advisory Board* v. *McCalley,* 181 *Ga.* 329 (182 S. E. 6). The act of March 16, 1933, above referred to, does not purport to alter this rule, for in section 9 (g) (now Code, § 89-824), it is expressly provided that the proper county authority may issue execution against any defaulting collecting officer without serving citation or notice.

■ The case of *McDuffie* v. *Wilcox County,* 165 *Ga.* 164 (140 S. E. 379), and cit., directly support the pronouncement in the second headnote. The clause in the Code, § 89-824, to the effect that "On the trial of the case, whether in equity or on affidavit of illegality, the burden of proof shall be on the official or authority issuing the execution," read in connection with another clause in the same section, to wit, "and such execution shall be prima facie evidence of the facts, including the amount of loss sustained, therein recited," does not in substance change the rule. When the fi. fa. is introduced in evidence, as was done in this case, the burden of proof is shifted.

■ Section 11 of the act approved March 16, 1933, now appearing as Code, § 89-832, is in language as follows: "No action (whether at law or in equity or by citation or issuance of ex parte execution as herein provided for) on the bond of such collecting officer, or officer to hold public funds, or bank, or depository shall be maintained unless the action or proceeding be begun in six years from the date the alleged cause of action accrued; nor against any surety thereon, unless within three years from the date of this law, or within three years from the date the alleged cause of action ac-

crues, suit shall have been begun against the surety, or citation shall have been issued against the surety by the official or county authority having jurisdiction to cite, or execution shall have issued against the surety as herein provided for, on account of the alleged breach of the bond." The surety bonds were executed prior to March 16, 1933. It is the contention of the plaintiff in error that limitations provided for in the Code, § 89-832, govern this case. As to this, we must first inquire whether it was the intention of the General Assembly to apply the provision of the aforesaid act to bonds executed prior to the date of its approval. We are for the moment laying to one side the question whether or not the act is retroactive as that word is used in our laws. Our Code, § 102-104, in part declares: "Laws prescribe only for the future; they can not impair the obligation of contracts, *nor, usually, have a retrospective operation,*" (italics ours) ; and the settled rule for the construction of statutes is not to give them a retrospective operation, unless their language imperatively requires it, but the authorities are equally clear that they will be given a retrospective effect if the language does so require it. See *Walker County Fertilizer Co.* v. *Napier,* 184 *Ga.* 861, 869, 870 (193 S. E. 770), and cit. Section 19 of the act declares that "The provisions of this act shall apply to existing bonds, so far as they can be applied without violating any provision of the constitution of this State or of the United States." We have here a legislative declaration of intent that the act shall be given a retrospective effect, so far as it can be done consistently with constitutional provisions. We shall accordingly so treat it, unless so to do would run counter to our constitutional inhibition against retroactive legislation, contained in our bill of rights, article 1, section 3, paragraph 2, Code, § 2-302.

■ Only retrospective enactments which are ex post facto in their character, that is, those whose effect is to impair the obligation of contracts, or to divest vested rights, are within our constitutional prohibition against retroactive legislation. *Wilder* v. *Lumpkin,* 4 *Ga.* 208. As was observed by Judge Lumpkin in *Boston* v. *Cummins,* 16 *Ga.* 102, 106 (60 Am. D. 714), "Every *ex post facto* law must necessarily be retrospective, but every retrospective law is not an *ex post facto* law." In the case last cited a survey was made of the many instances in which the General Assembly of Georgia enacted laws which were in form and in fact

retrospective, "which have been either adjudged to be constitutional by the courts, or uniformly acquiesced in; and thus may be considered as having received the public sanction." The Code, § 102-104 contains the following provision: "Laws looking only to the remedy or mode of trial may apply to contracts, rights, and offenses entered into or accrued or committed prior to their passage; but in every case a reasonable time subsequent to the passage of the statute should be allowed for the citizen to enforce his contract, or protect his right." That merely stated a rule of general law common, we believe, to all jurisdictions, and recognized by this court in *Boston* v. *Cummins*, supra, and in *Central Bank of Georgia* v. *Solomon*, 20 *Ga.* 408, and which has since been applied in a number of cases. The authorities in and out of this State are likewise uniform in holding that statutes of limitation look only to the remedy, and accordingly will be upheld as against contracts entered into anterior to its passage, provided a reasonable time be fixed from the period at which the statute goes into operation. *Cox* v. *Berry*, 13 *Ga.* 306; *Obear* v. *First National Bank of Birmingham*, 97 *Ga.* 587 (25 S. E. 335, 33 L. R. A. 384); *Thomas* v. *Clarkson*, 125 *Ga.* 72 (54 S. E. 77, 6 L. R. A. (N. S.) 658); *Davidson* v. *Lawrence*, 49 *Ga.* 335; *Kimbro* v. *Bank of Fulton*, 49 *Ga.* 419; *George* v. *Gardner*, 49 *Ga.* 441; Canadian Ry. Co. *v.* Eggen, 252 U. S. 553 (40 Sup. Ct. 402, 64 L. ed. 713); Terry *v.* Anderson, 95 U. S. 628 (24 L. ed. 365); Kozisek *v.* Brigham, 169 Minn. 57 (210 N. W. 622, 49 A. L. R. 1260); 17 R. C. L. 672. It can hardly be contended that the three years, fixed by the act here involved, was an unreasonable time. In *George* v. *Gardner*, supra, it was held: "In the opinion of the General Assembly, nine months and a half was a reasonable time within which plaintiffs should have their remedy to enforce the class of debts or claims specified in the act, and we can not say that the time was so short or unreasonable as to make the act unconstitutional. . . In our judgment, there was no error in the court below in holding and deciding that the plaintiff was barred of his right of action to foreclose his mortgage against Gardner, the mortgagor, under the provisions of the act of the General Assembly passed on the 16th of March, 1869, on the statement of facts disclosed in the record."

In the above case the court held plaintiff's right of action barred even though the note was under seal and he would have had several

years longer in which to bring his action had it not been for the act of 1869 fixing and limiting a new statute or time in which it could be brought. Other Georgia cases citing and following the *George* case are as follows: *Gammel* v. *Mulford,* 53 *Ga.* 78; *Mosely* v. *Mitchell,* 53 *Ga.* 356; *Neal* v. *Duffee,* 54 *Ga.* 591; *Coleman* v. *Worrill,* 57 *Ga.* 124, 127; *Leathers* v. *Furr,* 62 *Ga.* 421; *Pritchard* v. *Savannah St. &c. Ry. Co.,* 87 *Ga.* 294 (13 S. E. 493, 14 L. R. A. 721); *Moore* v. *Moore,* 103 *Ga.* 517, 522 (30 S. E. 535); *DuBignon* v. *Brunswick,* 106 *Ga.* 317-327 (32 S. E. 102); *Weaver* v. *Davis,* 2 *Ga. App.* 455 (58 S. E. 186).

▇ What is the period of limitations governing the proceeding instituted by the county commissioner? Counsel for plaintiff in error contends that this proceeding begun by the county commissioner was under the act of 1933, above referred to, and that section 11 of that act (Code, § 89-832) fixes the time when the limitation commences. Counsel for defendant in error contends that the execution was not issued under and by virtue of that act, but under the Code, §§ 92-3807 to 92-3809; and that the limitation is that fixed by § 3-703, which declares that "Actions upon bonds or other instruments under seal shall be brought within twenty years after the right of action shall have accrued." The entire act of 1933 has been codified, but the Code also contains the law relating to the same subject-matter as it existed prior to the approval of the act. See Code, §§ 3-703; 40-1505; 92-3807, 92-3809, 92-3810; 92-5504. If there be a conflict between Code sections, both derived from legislative acts, and the Code has been adopted by an act of the legislature, that section prevails which is derived from the later act, such being considered the last expression of the lawmaking power on the subject. *Berry* v. *Jordan,* 121 *Ga.* 537 (49 S. E. 607); *Slaten* v. *State,* 141 *Ga.* 82 (80 S. E. 850); *Williams* v. *Western & Atlantic R. Co.,* 142 *Ga.* 696 (83 S. E. 525).

▇ The statute of limitations urged by plaintiff in error presents the most serious question contained in the record. The date of the order and execution entered by the county authority was November 3, 1936. The jury found there had been a breach of the bond covering the years 1929 to 1936, inclusive, but found no loss to the county subsequently to March 16, 1933. The bonding company pleaded as follows: "Petitioner further alleges and will show to the court that the county's right to issue a summary execution was

barred by the statute of limitations at the time said execution was issued, for the reason that the statute under which said execution was issued, Georgia Laws 1933, p. 78, expressly provides that no such summary execution shall issue against a surety unless issued within three years from the date of said act, March 16, 1933, or within three years from the date the right of action accrued, which right of action was then barred by the statute for the reason that defendant's notice of claim and demand filed with petitioner shows that the right of action accrued on and prior to July 31, 1933. . . That E. F. Parker, sole commissioner of roads and revenues of Toombs County, knew of and had actual notice of the alleged shortage in the accounts of C. W. Culpepper on and prior to March 16, 1933, and had talked to the principal, C. W. Culpepper, and knew that the alleged default was disputed by C. W. Culpepper on and prior to March 16, 1933, and more than three years before the issuing of the summary execution against petitioner as alleged in its original petition."

The position of counsel for defendant in error is that even though the act of 1933 is applicable to the instant case, the execution was issued within the time required by the act, because it was against both the principal and surety; that section 89-832 of the Code (codified from that act) contemplates and provides for any action against the principal alone to be begun within six years from the date of the accrual of the cause of action, and contemplates and provides for any action against the surety alone to be begun within three years from the date of the law, or within three years from the date of the accrual of the cause of action. Section 11 of the act, codified as § 89-832, reads as follows: "No action (whether at law or in equity or by citation or issuance of ex parte execution as herein provided for) on the bond of such collecting officer, or officer to hold public funds, or bank, or depository shall be maintained unless the action or proceeding be begun in six years from the date the alleged cause of action accrued; nor against any surety thereon, unless within three years from the date of this law, or within three years from the date the alleged cause of action accrues, suit shall have been begun against the surety, or citation shall have been issued against the surety by the official or county authority having jurisdiction to cite, or execution shall have issued against the surety as herein provided for, on account of the alleged

breach of the bond." That section of the act, as it finally came from the legislative mill, may be somewhat confusing in some of its language, but in our opinion the act is applicable to the case presented by this record, and the surety has the right, in an attempt to arrest the enforcement of the execution by a suit in equity, to plead that the cause of action accrued more than three years before the date of the execution; and if on the trial it sustains this plea, it presents a valid reason why the execution should not proceed against it, regardless of the right of the county to proceed with it against its principal. When the plaintiff elects to proceed against the principal and surety jointly, the limitation applicable to each, though different, will be enforced.

■ When did the cause of action accrue? At the time of the defalcation (money was embezzled), or from the time of the discovery of the fraud, or the time it could have been discovered by the exercise of ordinary care and diligence? The order and the execution following it are dated November 3, 1936. Each contains a recital that "C. W. Culpepper, sheriff of said county, is in possession of the sum of $6624.01 of county money of Toombs County collected for county purposes of Toombs County," and that he "fails and refuses to pay over the same to the proper authorities of Toombs County." It is undisputed in the evidence, and so found by the jury in answer to a question propounded to them by the court, that the alleged defalcation occurred prior to March 16, 1933. Ordinarily a right of action has its inception from the time there is a breach of duty. *Mobley* v. *Murray County,* 178 *Ga.* 388 (173 S. E. 680). Counsel for defendant in error contend that the cause of action accrued only when the defalcation came to the attention of the authority having in charge the fiscal affairs of the county, and he refers us to section 9 of the act (Code, § 89-818). That section, in giving the authority the right to cite the collecting officers and their sureties for an accounting and settlement of accounts (a remedy not resorted to in the present case), declares that this may be done "upon its coming to the attention of the official or authority having jurisdiction to cite for accounting that a collecting officer or officer to hold public funds has been guilty of any default or breach of duty," etc. We do not think the section relied on fixes, as the beginning of the time when the statute of limitations shall run as to the right to proceed ex parte, as was done in

the instant case, the date when the defalcation came to the attention of the sole county commissioner.

There are other reasons urged in support of the contention that the right of action did not accrue until the county authorities had knowledge of the shortage, and that the very nature of an act resulting in the misappropriation of public funds is such a fraud as to prevent the statute of limitations from operating until the misappropriation is discovered. Code § 3-807 reads as follows: "If the defendant, or those under whom he claims, shall have been guilty of a fraud by which the plaintiff shall have been debarred or deterred from his action, the period of limitation shall run only from the time of the discovery of the fraud." In *Hoyle* v. *Jones*, 35 *Ga.* 40 (89 Am. D. 273), we find the pronouncement that "The concealment of a right, by one whose duty it is to disclose it, prevents the running of the statute of limitations in favor of the party in default." In *American National Bank of Macon* v. *Fidelity & Deposit Co.*, 131 *Ga.* 854 (63 S. E. 622, 21 L. R. A. (N. S.) 962), this court ruled that "Where the basis of an action is actual fraud, the mere silence of the party committing it is treated as a continuation of the original fraud and as constituting a fraudulent concealment, and the statute of limitations does not begin to run against such right of action until such fraud is discovered, or could have been discovered by the exercise of ordinary care and diligence." In *Poullain* v. *Poullain*, 76 *Ga.* 420 (5b), it was said that "Concealment per se amounts to actual fraud, where, from any reason, one party has a right to expect full communication of the facts from another." But in order to relieve the bar of the statute from attaching, the fraud must be more than constructive fraud; it must be actual fraud, indeed fraud that involves moral turpitude. So it was said by this court in *Austin* v. *Raiford*, 68 *Ga.* 201, *Downs* v. *Harris*, 75 *Ga.* 834, *Anderson* v. *Foster*, 112 *Ga.* 270 (37 S. E. 426), and *Maxwell* v. *Walsh*, 117 *Ga.* 467, 471 (43 S. E. 704).

It would be too broad a statement, therefore, to lay down the rule that in each case where the county authorities proceed against a collecting officer for moneys with which he is charged, and which are due the county, the statute of limitations does not begin to run against the county until the actual default by the officer becomes known. For instance, if the failure of the collecting officer to pay over what was actually due by him arose from mere errors or in-

accuracies in accounts, without more, that would not be sufficient to relieve the bar of the statute. Compare *Austin* v. *Raiford*, supra. Nor, to put an extreme case, do we suppose it would be thought that if the officer, when on the way to the bank at noon to there deposit the moneys collected by him that morning, was waylaid by robbers and forcibly relieved of his currency, and that his shortage arose by reason thereof, it would be sufficient to relieve the bar of the statute. Compare *Robinson* v. *State,* 109 *Ga.* 564 (35 S. E. 57, 77 Am. St. R. 392). There is still another element that enters into this question, and that is this: even in cases of actual fraud such as "will prevent the statutory bar from attaching until it is discovered, there must be reasonable diligence on the part of plaintiff to discover and detect the fraud." *Marler* v. *Simmons,* 81 *Ga.* 611 (8 S. E. 190), cited approvingly in *Kirkley* v. *Sharp,* 98 *Ga.* 484, 487 (25 S. E. 562). See also *Freeman* v. *Craver,* 56 *Ga.* 161; *Sutton* v. *Dye,* 60 *Ga.* 449; *Maxwell* v. *Walsh,* supra.

■ The evidence properly submitted to the jury supports so much of their finding, in amount, as to the sheriff's shortage, as was finally approved by the judge and assented to by counsel for the county.

■ The special grounds of the motion remain to be noticed.

(*a*) It is apparent from the record that the controlling issues insisted upon by counsel were those that questioned the right of the county to a decree for any sum at all against the surety company. There is no specific complaint in the motion as to the amount of the verdict.

(*b*) Ground 1 of the amended motion complains of the admission in evidence of the order and judgment of E. F. Parker, sole commissioner, the objection to this evidence being that it "recites and relates to an audit made by Eaton, Saussy & Co., and it does not state it is correct, and it is inadmissible inasmuch as it merely recites that it is issued upon the audit of Eaton, Saussy & Co., because it is based upon merely an opinion or hearsay without any proof of its correctness; Mr. Parker is assuming to act upon what somebody else said, and the order so recites; and upon the further ground that once a proceeding in equity is brought like we do in this case, that this is a nullity and has no value whatsoever until they first prove the amount of the shortage, and this paper offered is

meaningless." The order and the execution (or judgment) recites that "Upon consideration of the audit heretofore made and the account of Toombs County as their relation to county money of Toombs County and other records and evidence with relation thereto." The objection was properly overruled.

(c) Ground 2 complains that the court committed error in denying movant's motion for a directed verdict in its favor. It is never error to refuse to direct a verdict. *Douberly* v. *State*, 184 *Ga.* 577, 579 (192 S. E. 226).

(d) Ground 14 is based on the refusal of the court to rule out the entire testimony of the witness Saussy, an auditor, as to an audit he made, his evidence consisting of forty-eight pages of typewritten matter, and the objections covering nearly five pages. There are many reasons why this general objection is not meritorious. One who made an audit of books may testify as to what he found therein. *Crawford* v. *Roney*, 126 *Ga.* 763 (55 S. E. 499); *Payne* v. *Franklin County*, 155 *Ga.* 219 (2) (116 S. E. 627).

(e) Grounds 15 and 16 relate to a charge of the court in which it was recited as a part of the contentions that the order and execution hereinbefore referred to were issued by Parker, and that thereafter the petition in equity was filed by the surety. There was no error in so doing.

(f) Grounds 17 and 18 complain that the court charged the jury that when the county put in evidence the aforesaid order and execution it made a prima facie case sufficient to cast the burden on the other side. This was a correct application of section 9 (g) of the act, now codified as Code, § 89-824.

(g) In ground 19 movant insists that the court erred in defining the preponderance of evidence. Though not in the precise language of the Code, it was substantially so, and no error is shown in this ground.

(h) The basis of ground 20 is that the court in his charge read to the jury the recitals in the bond executed by the sheriff and his surety, and then added: "Has there been a breach of that bond, and if so, did that breach result in financial loss in any sum to the County of Toombs?" The charge was not confusing and misleading, as contended.

(i) Grounds 21 and 22 complain because in his charge the court instructed the jury that the twenty-year limitation applied,

and that the county would not be barred within that time. We think this was error, and have discussed it elsewhere in this opinion.

(*j*) In ground 23 error is claimed because of the question submitted to the jury as the basis of their verdict, eliminating any question of the statute of limitations. This also is dealt with elsewhere in this opinion.

(*k*) Grounds 24 and 25 deal with requests to charge on the question as to the statute of limitations, which have been dealt with by us in what has already been said.

(*l*) Ground 26 complains of the refusal by the court to give a requested charge to the effect that any entries made in a private document, book, or record kept by Culpepper or his deputies were subject to explanation by Culpepper or his deputies making the entries, and that the jury "will not necessarily presume the correctness of such entry and the same will not be binding upon the plaintiff, the surety company, unless it be shown by a preponderance of the evidence that he actually collected the money as shown by such entries." In view of the evidence, or lack of it, and the entire charge of the court, this ground affords no reason for the grant of a new trial.

(*m*) The comment made as to ground 26 is applicable also to a somewhat similar request to charge contained in ground 27.

(*n*) Ground 28 complains that the court erred in entering judgment on the verdict of the jury, because the jury found that all the defalcation and misappropriation of county moneys occurred prior to March 16, 1933, more than three years before the issuing of the execution, and therefore the same was barred. No additional comment as to this need be made.

(*o*) Ground 29 insists that movant is entitled to a new trial because the undisputed evidence shows that if there was a defalcation or misappropriation by Culpepper, it occurred more than three years before the execution was issued against the plaintiff surety company, and that Parker, the sole commissioner in charge of the fiscal affairs of the county, had actual notice of the defalcation or misappropriation prior to August 17, 1933, which was more than three years before the execution was issued, and that if the county authorities ever had a right to issue an execution against the plaintiff, that right was barred by the statute of limitations at the time the execution was issued.

None of the special grounds, save those referring to the rulings of the trial court on the statute of limitations, present any reason for the grant of a new trial.

█ The sole error being the failure of the presiding judge to submit to the jury the issue as to whether the county's cause of action was barred by the statute of limitation, we grant a new trial with direction that the trial court submit that question to the jury on the next trial, and instruct them (provided the evidence at that trial justifies it) that ordinarily no action against a surety based on the issuance of an execution of this character can be maintained unless the same be begun within three years from the date of the accrual of the cause of action; provided that if the collecting officer, in failing to account and pay over, was guilty of an actual fraud amounting to moral turpitude, the proceeding on behalf of the county was brought in time, and the statute of limitation would not bar the county from asserting its claim against the surety on his bond, unless the jury should find that the sole commissioner having charge of fiscal affairs did not begin the proceeding until three years after knowledge came to him of the shortage, and that he used reasonable diligence to discover and detect the fraud. See in this connection *McCranie* v. *Bank of Willacoochee,* 29 *Ga. App.* 552 (116 S. E. 202).

If the jury shall find that the action as to the surety company is so barred, let a decree be entered in favor of the United States Fidelity & Guaranty Company. If the jury shall find that it is not barred, let a decree be entered in favor of Toombs County against C. W. Culpepper, principal, and United States Fidelity & Guaranty Company, surety, in the amount found by the jury on the former trial, to wit, $6589.01 principal, besides interest, less the sum of $1562.14, this latter amount having been written off of the verdict by counsel for defendant in error in compliance with a condition placed by the trial court in his order refusing a new trial. *Central Railroad & Banking Co.* v. *Raiford,* 82 *Ga.* 400 (9 S. E. 169); *Western & Atlantic R. Co.* v. *Young,* 83 *Ga.* 512 (10 S. E. 197); *Polhill* v. *Brown,* 84 *Ga.* 338, 344 (10 S. E. 921); *Georgia R. & Bkg. Co.* v. *Daniel,* 89 *Ga.* 463 (15 S. E. 538); *Brantley Company* v. *Johnson,* 102 *Ga.* 850, 851 (2) (29 S. E. 486); *Watson & Powers* v. *Loughran,* 112 *Ga.* 837, 842 (38 S. E. 82); *Bourquin* v. *Bourquin,* 120 *Ga.* 115, 121 (47 S. E. 639);

559

*Johnson* v. *Johnson,* 131 *Ga.* 606, 610 (62 S. E. 1044) ; *Zellars* v. *Orr,* 147 *Ga.* 607 (95 S. E. 6).

*Judgment reversed, with direction. All the Justices concur.*