## A05A0859. JONES v. THE STATE.
(625 SE2d 4)

Barnes, Judge.

A jury convicted Richard Jones of possessing illegal gambling devices, and he appeals. He contends that possessing these particular machines in a non-public warehouse without operating them is not a crime under the Video Poker Act of 2001, OCGA § 16-12-20 et seq., and thus the trial court erred in denying his motion to suppress, in allowing witnesses to testify that certain machines were "gambling devices," and in giving certain jury charges, as well as in denying his motion in arrest of judgment. For the reasons that follow, we affirm.

We view the evidence on appeal in the light most favorable to the verdict, and no longer presume the defendant is innocent. We do not weigh the evidence or decide the witnesses' credibility, but only determine if the evidence is sufficient to sustain the convictions. *Taylor v. State*, 226 Ga. App. 254, 255 (485 SE2d 830) (1997). We construe the evidence and all reasonable inferences from the evidence most strongly in favor of the jury's verdict. *Sims v. State*, 226 Ga. App. 116 (1) (486 SE2d 365) (1997).

Viewed in that light, the evidence established that a Clayton County undercover detective visited an alleged gambling den known as "Unique Treasures," and saw, among other things, people gambling on video machines. The detective told the owner, Talmadge Long, that he wanted to buy a Cadillac Jack blackjack machine, and Long replied that he could obtain one. When the detective subsequently picked up the $6,000 machine, Long explained how the machine worked and how to collect money and award prizes.

Long was arrested at that time, and acting on information he received during the arrest, the detective contacted DeKalb County detectives. A DeKalb detective testified at the motion to suppress hearing that they went to a business known as "Lucky Coin" in Tucker offices to see if they could gather enough information for a warrant. The office was closed, but the detectives could see rows of machines through the tinted windows, which appeared to be identical to the gambling machines seized at Unique Treasures.

Based on Clayton County's information from the raid and on the DeKalb detectives' visit to Lucky Coin, a DeKalb detective drafted an affidavit and obtained a search warrant for the business premises. A Lucky Coin employee admitted them to the offices, where they found 221 video gambling machines either in storage or in parts, along with a Lucky Coin business card with Jones's name on it. The detectives waited until Jones came to work, then arrested him.

Based on information they found in Jones's wallet, the detectives obtained another warrant and searched a metal storage building in another location, where they found 35 more machines. While executing a third search warrant for Jones's house, the detectives found documents regarding Jones's ownership of Lucky Coin.

Jones was accused of violating OCGA § 16-12-24 by (1) possession of a gambling device; (2) transfer of gambling devices; (3) possession of subassemblies of devices designed for gambling purposes; and (4) possession of essential parts of devices designed for gambling purposes.

After a hearing, the trial court denied Jones's motion to suppress all of the physical evidence. The case was tried to a jury, who convicted Jones of possessing gambling devices, subassemblies, and essential

parts. The trial court merged the offenses and sentenced Jones to 12 months probation, 80 hours of community service, and a $5,800 fine.

Jones contends that the trial court erred in denying his motion to suppress, and that the search warrants lacked probable cause because the gambling devices statute only prohibits operating video gambling machines, not possessing them. He also argues that, for the same reason, the accusation fails to charge him with a criminal offense, and that the trial court erred in its jury charges. Finally, he contends that the trial court erred in denying his motion in limine to prevent the State's witnesses from testifying that the machines they seized from his office and storage facility were "gambling devices."

1. Jones asserts that OCGA § 16-12-20 (2) (C), defines "gambling device" as certain video games that are "operated for any consideration," and that it is therefore legal to possess such video games as long as they are not being operated. The Georgia General Assembly, however, criminalized even the possession of video gambling devices in 2001, partly as a result of an influx of such devices after South Carolina shut down such gambling the year before.

After July 2000, the number of video poker machines in Georgia increased dramatically, causing one state senator to refer to video poker as " 'a scourge every bit as devastating as Sherman's March to the Sea.' "[1] In 2001, the legislature ended legalized gambling by enacting the Video Poker Act of 2001, which criminalized the possession of video gambling devices. This act expanded the language of OCGA § 16-12-20 (2), designating the existing provision as subsection (A) and adding the following definitions:

> (B) Any slot machine or any simulation or variation thereof;
> (C) Any matchup or lineup game machine or device, operated for any consideration, in which two or more numerals, symbols, letters, or icons align in a winning combination on one or more lines vertically, horizontally, diagonally, or otherwise, without assistance by the player. Use of skill stops shall not be considered assistance by the player; or
> (D) Any video game machine or device, operated for any consideration, for the play of poker, blackjack, any other card game, or keno or any simulation or variation of any of the foregoing, including, but not limited to, any game in which numerals, numbers, or any pictures, representations, or

---

[1] Cheralynn M. Gregoire, Peach Sheets – Crimes and Offenses, 19 Ga. St. U. L. Rev. 105, 106-108 (2002).

symbols are used as an equivalent or substitute for cards in the conduct of such game.

Any item described in subparagraph (B), (C), or (D) of this paragraph shall be a prohibited gambling device subject to and prohibited by this part, notwithstanding any inference to the contrary in any other law of this state.

Additionally, OCGA § 16-12-24 now prohibits the possession not only of gambling devices but even of parts or subassemblies of a gambling device. The Code section declares to be contraband all gambling devices with the exception of antique slot machines that are not being used for gambling purposes.

In the only case to date about this statute, the Supreme Court of Georgia held it was constitutional, and further held:

The act amends OCGA §§ 16-12-20, 16-12-35, and 48-17-1, by criminalizing the use and possession of video poker amusement machines. The act came on the heels of similar legislation in South Carolina, and the concomitant influx of video poker machines into this state. It is aimed at stopping the illegal use of the machines for gambling activity in the form of cash payouts. Heretofore, the machines were lawful as long as they were designed and manufactured for "bona fide amusement purposes" involving "some skill" and "non-cash" rewards. OCGA § 16-12-35 (d) (1); see *Webb v. City of Rossville*, 198 Ga. App. 294 (401 SE2d 312) (1991). With the advent of the new act, the machines are unlawful even if they are played purely for amusement purposes.

*State of Ga. v. Old South Amusements*, 275 Ga. 274, 275 (564 SE2d 710) (2002).

The Supreme Court's interpretation of this statute could not be clearer, and thus Jones's argument that the machines were only unlawful if they were actually being used is not persuasive. He contends that OCGA § 16-12-20 (2) defines a gambling device as one "operated for any consideration," and that therefore a device is legal that otherwise meets the definition of an illegal gambling device but is not currently being operated for any consideration. This argument is illogical, for it would make such devices illegal when they are installed at the point of sale but legal during storage and transportation. That the legislature did not intend to limit the definition of a gambling device to one currently being operated by consideration is supported by the following language in the act, not codified by the General Assembly:

During the period beginning January 1, 2002, and ending June 30, 2002, it shall not be unlawful to possess in this state a machine or device described in subparagraph (B), (C), or (D) of paragraph (2) of Code Section 16-12-20, if: (1) Such machine is not in use; (2) Such machine is in transit to a storage facility or in a storage facility, which said storage facility is a secured facility and no part of same is accessible by anyone other than employees of said facility or employees of the owner of said machine; and (3) Such machine is not located in a place which is open to the public and is not located in a private club.

Ga. L. 2001, Ex. Sess., p. 312, § 5. If Jones's argument were correct, the legislature would have had no need to allow a grace period during which secured possession of gambling devices was "not unlawful."

Further, the Supreme Court clarified that mere possession is unlawful. The trial court held that the act was unconstitutionally overbroad because the State could meet its legitimate goal of curtailing the illegal gambling problem by only criminalizing illegal payouts, instead of placing "an outright ban on amusement machines in order to prohibit cash awards. . . . The problem is that, as an August 2001 GBI impact study points out, the cost of policing amusement machines to ensure that they are not used illegally is prohibitive." *State of Ga. v. Old South Amusements*, supra at 277. The Supreme Court concluded that, while the legislature could have taken a less drastic approach, "the act bears a rational relation to the State's objective — [e]nsuring that amusement machines are not used for illegal cash payouts." Id. at 278. Thus the Supreme Court held that the outright ban on such machines is constitutionally permissible. We find unpersuasive Jones's argument that this Supreme Court opinion merely addresses the constitutionality of the statute and does not hold that mere possession is unlawful.

Jones's further contention that an Attorney General opinion and a Fulton County Superior Court order finding private possession lawful is also not persuasive, as such contrary opinions must yield to a decision by our Supreme Court. Accordingly, possession of devices designed for gambling purposes which have the capability of being operated for consideration and which otherwise fit the definitions in OCGA § 16-12-20 is illegal, unless the owner is exempt pursuant to OCGA § 16-12-35 (a).

2. Jones argues that the trial court erred in denying his motion to suppress the evidence found in searches of his office, storage facility, and home. He contends that the magistrate who issued the first warrant for his office made "a mistake of law as to 'probable cause,' " because mere possession of these machines is not illegal, an

issue we decided adversely to Jones in Division 1. Jones also argues that the affidavit in support of the warrant failed to distinguish between video poker machines and video machines generally, and also argues that the video games were being stored for transfer to jurisdictions where their use was legal, as permitted by OCGA § 16-12-35, and that therefore the issuing magistrate lacked sufficient probable cause to issue the search warrant.

"Where the evidence on a motion to suppress is uncontroverted and credibility is not an issue, we review the evidence and the application of the law thereto de novo, construing all evidence in favor of the trial court's judgment." (Footnote omitted.) *Almond v. State*, 242 Ga. App. 650 (1) (530 SE2d 750) (2000). A search warrant will issue only upon facts "sufficient to show probable cause that a crime is being committed or has been committed. . . ." OCGA § 17-5-21 (a). In determining whether probable cause to issue a search warrant exists, the magistrate's task is

> simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed.

(Punctuation omitted.) *Illinois v. Gates*, 462 U. S. 213, 238-239 (103 SC 2317, 76 LE2d 527) (1983); *State v. Stephens*, 252 Ga. 181, 182 (311 SE2d 823) (1984).

In this case, the DeKalb detective's affidavit in support of the warrant stated that Clayton County investigators had purchased an illegal video poker machine from a subject in Clayton County, who said he obtained the machine from a particular address in DeKalb County. Both DeKalb and Clayton investigators observed "several other illegal video poker machines" at that address. While Jones argues that the investigators could not tell from looking at the machines whether they were legal or not, the test is not whether the information in the affidavit establishes with certainty that contraband will be found, but only whether it establishes a fair probability that contraband will be found. The trial court did not err in concluding that the magistrate court had sufficient probable cause to issue the search warrant for Jones's warehouse.

3. The trial court did not err in charging the jury that gambling devices, as defined by the statute, were unlawful even if they were played for amusement purposes and that the State did not have to

prove a further violation of the law by their actual operation, for the reasons given in Division 1.

4. Jones contends that the trial court erred in denying his motion in limine to prevent the State's witnesses from testifying that the machines seized were "gambling devices," because the phrase was a legal conclusion that expressed an opinion as to the ultimate fact the jury should decide. The trial court held that mere use of the words "gambling device" or "gambling machine" did not connote a legal opinion.

"As a general rule a witness is not permitted to express an opinion of ultimate fact or the fact to be decided by the jury because to do so would invade the province of the jury. [Cit.]" (Punctuation omitted.) *Nichols v. State*, 177 Ga. App. 689, 692 (2) (340 SE2d 654) (1986) (reversible error to allow doctor to testify that victim was "raped"). Cf. *Smith v. State*, 247 Ga. 612, 619 (277 SE2d 678) (1981) (expert's opinion regarding "battered woman syndrome" admissible at trial). Besides arguing that mere possession of machines prohibited by statute was not illegal, Jones also contended at trial that the seized machines were not necessarily set up for gambling. He argued that the detectives seized cabinets with signs containing circuit boards, and the appearance of the cabinets did not necessarily reflect the games operating within those cabinets. But the detectives testified that the machine they purchased was set up for gambling, and the jury had to determine whether Jones sold that machine to Long, who then sold it to the detectives, and whether that machine was illegal under OCGA § 16-12-20 (2). Describing the machines they seized as "gambling machines" does not answer those issues.

Further,

> [a]dmissibility of evidence is a matter which rests largely within the sound discretion of the trial court, and if an item of evidence has a tendency to help establish a fact in issue, that is sufficient to make it relevant and admissible. [Cit.] Evidence of doubtful relevancy or competency should be admitted and its weight left to the jurors. [Cit.]

*Lewis v. State*, 158 Ga. App. 586, 587 (1) (281 SE2d 331) (1981).

Accordingly, the trial court did not err in denying Jones's motion in limine.

5. Jones argues that the trial court erred in denying his motion in arrest of judgment, contending that the accusation did not charge a criminal offense. OCGA § 16-12-24 (a) provides that "A person who *knowingly* owns, manufactures, transfers commercially, or possesses any device which he *knows* is designed for gambling purposes or anything which he knows is designed as a subassembly or essential

part of such device is guilty of a misdemeanor of a high and aggravated nature." (Emphasis supplied.) Jones contends that the accusation against him is insufficient because it only charges that he knowingly possessed a device designed for gambling, instead of charging him with knowingly possessing a device *he knew* was designed for gambling, and thus omitting the essential element of scienter.

In attacking an accusation after the verdict, every presumption and inference is in favor of the verdict. By failing to file a demurrer before trial, Jones waived his right to a perfect accusation. "Therefore, a motion to arrest judgment should be granted only if the [accusation] is absolutely void. [Cit.]" *Staples v. State*, 199 Ga. App. 551, 552 (405 SE2d 551) (1991). An accusation is not void if it "definitively inform[s] the accused of the charges against him, so that he may present his defense and avoid surprises at trial, and . . . it protect[s] the accused against another prosecution for the same offense. *Berger v. United States*, 295 U. S. 78, 82 (55 SC 629, 79 LE 1314) (1934)." Id. In this case, in addition to charging Jones with knowingly possessing a device designed for gambling, each count of the accusation cited the applicable Code section, OCGA § 16-12-24. There can be no reasonable doubt that Jones was sufficiently informed of the charges against him and also protected from subsequent prosecution for the same crime. The trial court did not err in denying his motion for arrest of judgment. *Campbell v. State*, 223 Ga. App. 484, 486 (3) (477 SE2d 905) (1996).

*Judgment affirmed. Ruffin, C. J., and Johnson, P. J., concur.*

## On Motion for Reconsideration.

Jones has moved us to reconsider our opinion, arguing that it eviscerates OCGA § 16-12-35 (a), which provides that "[a]ny other laws to the contrary notwithstanding, this part shall not be applicable to the manufacturing, processing, selling, possessing, or transporting of any . . . gaming equipment, devices, or other materials used or designated for use only in jurisdictions in which the use of such items is legal." He further argues that "the evidence was uncontradicted the games were possessed pursuant to OCGA § 16-12-35 (a) and were not available to the public." To the contrary, no evidence established that Jones possessed the devices for transport to jurisdictions where their use is legal. The evidence to which Jones cites consists of testimony establishing only that the devices were not available to the public. As we discussed in Division 1, OCGA §§ 16-12-20 and 16-12-24 criminalize the possession of gambling devices, regardless of whether they are actually being operated for consideration. The fact that they *can* be operated for consideration is the

deciding factor, and the State in this case demonstrated that a representative machine was set up to operate for consideration. This case does not involve and we make no ruling regarding the exception contained in OCGA § 16-12-35 (a).

*Motion for reconsideration denied.*

DECIDED NOVEMBER 9, 2005 —
RECONSIDERATION DENIED DECEMBER 13, 2005 — 

*Manning & Leipold, Calvin A. Leipold*, for appellant.

*Shawn E. LaGrua, Solicitor-General, Troy P. Hendrick, Christopher W. Timmons, Assistant Solicitors-General*, for appellee.

*Wimberly, Lawson, Steckel, Weathersby & Schneider, Les A. Schneider, Paul Oliver, Jacqueline D. Joslyn*, amici curiae.