A10A2291. MANNATO v. SUNTRUST BANKS, INC.
(708 SE2d 611)

SMITH, Presiding Judge.

In this case presenting an issue of first impression, Edward Mannato appeals from a superior court order dismissing his complaint seeking to examine the corporate records and books of SunTrust Banks, Inc. In four related enumerations of error, he asks this court to find that he has a common law right of inspection that was not superceded by the Georgia General Assembly's enactment of OCGA § 14-2-1602 (e). For the reasons set forth below, we affirm the trial court's dismissal of Mannato's complaint.

A trial court's ruling on a motion to dismiss is reviewed de novo. See *Hendry v. Wells*, 286 Ga. App. 774, 781 (2) (650 SE2d 338) (2007).

> Our role is to determine whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, and with all doubts resolved in the plaintiff's favor, disclose with certainty that the plaintiff would not be entitled to relief under any state of provable facts.

(Citations and punctuation omitted.) Id. However, "it is still possible for a litigant to plead himself out of court by revealing a state of facts which affirmatively shows that there is no liability on the defendant. [Cits.]" *Hodge v. Dixon*, 119 Ga. App. 397 (167 SE2d 377) (1969). See also *Hendry*, 286 Ga. App. at 781-782 (2) ("'[A] party to an action is bound by material allegations made in his pleadings so long as they remain in his pleadings.") (citations and punctuation omitted).

On March 27, 2008, Mannato asked SunTrust to pursue legal claims against its officers and directors for breach of fiduciary duty in connection with the housing market collapse. On August 19, 2008, SunTrust's board of directors responded to Mannato's request in writing and rejected it. The board explained that it created a special committee and retained independent counsel to investigate Mannato's claims. Based on this investigation, SunTrust determined that the allegations of breach of fiduciary duty were "without basis in fact" and that "the best interests of the Company would not be served by commencing litigation."

On September 24, 2008, Mannato, in his capacity as a shareholder of SunTrust, demanded access to SunTrust's books and

records for inspection and copying. SunTrust's counsel denied this request, in part, because Mannato owned less than two percent of SunTrust's shares and was therefore not entitled to inspect its records and books under OCGA § 14-2-1602 (e) and SunTrust's bylaws.

Mannato subsequently filed a complaint in equity seeking to enjoin SunTrust from denying him access to its corporate books and records. SunTrust moved to dismiss because the books and records sought by Mannato could only be obtained by shareholders owning more than two percent of SunTrust's shares. The trial court agreed with SunTrust and dismissed Mannato's complaint based on its conclusion that OCGA § 14-2-1602 (e) permits corporations to limit the right to inspect certain corporate records and books to shareholders owning more than two percent of the corporation's outstanding shares.

In his appeal, Mannato contends the General Assembly's enactment of OCGA § 14-2-1602 (e) did not abrogate his common law right as a shareholder to inspect SunTrust's books and records. Mannato asserts that Georgia common law provides all shareholders with a right to inspect corporate books and records. See, e.g., *Winter v. Southern Securities Co.*, 155 Ga. 590, 601 (1) (118 SE 214) (1923).

In construing this statute,

> we apply the fundamental rules of statutory construction that require us to construe a statute according to its terms, to give words their plain and ordinary meaning, and to avoid a construction that makes some language mere surplusage. At the same time, we must seek to effectuate the intent of the legislature.

(Citations omitted.) *Slakman v. Continental Cas.* Co., 277 Ga. 189, 191 (587 SE2d 24) (2003). "In construing a statute, the cardinal rule is to glean the intent of the legislature." *Alford v. Public Svc. Comm.*, 262 Ga. 386, 387 (1) (a) (418 SE2d 13) (1992).

In 1988, the General Assembly enacted the "Georgia Business Corporation Code." OCGA § 14-2-101 et seq. The relevant subsection, OCGA § 14-2-1602 (e), "originated in a House committee amendment to the original bill." K. Barfield, "Revised Georgia Business Corporation Code," Selected 1988 Georgia Legislation, 5 Ga. St. U. L. Rev. 285, 297 (1988).[1] This subsection provides, in part, that "the right to

---

[1] While this publication colloquially known as the "Peach Sheets" is an unofficial source for legislative history, it has been cited for this purpose both by this court and by the Georgia Supreme Court. See, e.g., *Atlanta Oculoplastic Surgery v. Nestlehutt*, 286 Ga. 731, 739 (3), n. 9 (691 SE2d 218) (2010); *Jones v. State*, 276 Ga. App. 810, 812 (1), n. 1 (625 SE2d 4) (2005).

inspection enumerated in subsection (c) of this Code section may be limited by a corporation's articles of incorporation or bylaws for shareholders owning 2 percent or less of the shares outstanding." OCGA § 14-2-1602 (e). "[T]he two percent ownership restriction met with significant opposition and debate." 5 Ga. St. U. L. Rev. at 299. The opposition "focused on the seriousness of a corporation's ability to restrict shareholder access to records." Id. at 300. The proponents of the restriction "focused on the need to prevent harassment of corporations by shareholders who own relatively small interests" and argued "that the restriction was necessary for Georgia to remain a probusiness state." Id.

In light of this history, it appears the General Assembly intended to supercede any common law rights of inspection with the passage of OCGA § 14-2-1602 (e). To conclude otherwise would render this Code provision meaningless, a result precluded by our rules of statutory construction. *City of Jesup v. Bennett*, 226 Ga. 606, 609 (2) (176 SE2d 81) (1970) (holding courts should "refrain from ascribing to the legislature a wholly unreasonable intention or an intention to do a futile and useless thing"). Based upon the plain language of OCGA § 14-2-1602 (e) and the intent of the General Assembly, we conclude that this Code provision abrogates by necessary implication any common law right of inspection provided to shareholders owning two percent or less of a corporation's outstanding shares. See *Griggs v. Zimmerman*, 50 Ga. App. 24, 25 (177 SE 86) (1934) (legislature has authority to extinguish common law right of action by "necessary implication" of statute).

We find no merit in Mannato's claim that OCGA § 14-2-1602 (f) should be read in conjunction with OCGA § 14-2-1602 (e) to preserve a shareholder's common law rights of inspection.[2] First, OCGA § 14-2-1602 (f) is not an express savings clause of any common law rights of inspection by two percent or less shareholders. Second, construing it as an implied savings clause would render OCGA § 14-2-1602 (e) meaningless, a result to be avoided in statutory construction. *City of Jesup*, supra, 226 Ga. at 609 (2). Third, OCGA § 14-2-1602 (f) has meaning and import apart from that of a savings clause as advocated by Mannato. It would authorize a court to order production or discovery of corporate records and books in pending lawsuits involving issues such as piercing the corporate veil, share-

---

[2] OCGA § 14-2-1602 (f) provides:

This Code section does not affect: (1) The right of a shareholder to inspect records under Code Section 14-2-720 or, if the shareholder is in litigation with the corporation, to the same extent as any other litigant; or (2) The power of a court, independently of this chapter, to compel the production of corporate records for examination.

holder derivative suits, criminal cases, or administrative investigations by tax and insurance commissioners. See, e.g., OCGA §§ 33-2-16 (a), (c) (authorizing insurance commissioner to subpoena witnesses and compel production of records and other documents and superior courts to compel compliance); 48-2-53 (authorizing superior courts to compel compliance with tax commissioner's document requests).

Finally, Mannato cites the comment following OCGA § 14-2-1602 (f) in support of his claim to inspect the records. But the comment is not persuasive on this issue for several reasons. The comments were included in the Official Code of Georgia Annotated at the request of a State Bar of Georgia Committee with the following disclaimer:

> Neither the General Assembly of Georgia nor the Code Revision Commission of the State of Georgia has participated in the drafting of these comments or has reviewed the comments for their content. The comments should not be considered to constitute a statement of legislative intention by the General Assembly of Georgia nor do they have the force of statutory law.

OCGA Title 14, Chapter 2, Code Revision Commission Note on Comments, p. 10. Our Supreme Court has also noted that the comments do not control "the interpretation to be given the provisions of the [Georgia Business Corporations Code] or otherwise preclude[ ] our application of the rules of statutory construction." *Svc. Corp. Intl. v. H.M. Patterson & Son*, 263 Ga. 412, 415, n. 5 (434 SE2d 455) (1993).

Based on the reasoning outlined above, we conclude that Mannato cannot recover under any state of facts, and we therefore affirm the trial court's dismissal of Mannato's complaint.

*Judgment affirmed. Mikell and Adams, JJ., concur.*

DECIDED MARCH 23, 2011.

*Lacy & Snyder, William T. Lacy, Jr.*, for appellant.
*King & Spalding, Justin C. Jeffries, Michael R. Smith*, for appellee.