**FIFTH DIVISION**
**REESE, P. J.,**
**MARKLE and COLVIN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT.  ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**March 4, 2021**

# In the Court of Appeals of Georgia

A20A1968, A20A1969. RIDGEWALK HOLDINGS, LLC et al. v. ATLANTA APARTMENT INVESTMENT CORPORATION et al.; and vice versa.

REESE, Presiding Judge.

In this action to recover a real estate broker's commission, the Superior Court of Cobb County denied partial summary judgment on claims of promissory estoppel and quantum meruit filed by Atlanta Apartment Investment Corporation ("AAI") and Advocate Investments, LLC, (collectively, the "Plaintiffs") and denied without prejudice the Plaintiffs' motion to inspect the books and records of an LLC under OCGA § 14-11-313 (3). All parties have appealed. For the reasons set forth infra, we affirm the denial of the motion to inspect, reverse the denial of partial summary judgment, and remand the cases for proceedings not inconsistent with this opinion.

The Plaintiffs, real estate development firms managed by non-party William Butler, filed this action against Ridgewalk Holdings, LLC ("Holdings"), and Ridgewalk Property Investments, LLC ("RPI") (collectively, the "Defendants"). Viewing the summary-judgment evidence in the light most favorable to the Plaintiffs, as the non-movants,[1] the record shows the following. In or around 2000, Holdings acquired a large tract of commercial property in Woodstock known as the Ridgewalk Development, and executed an agreement giving Advocate the exclusive right to sell property within the development in exchange for a fixed commission. Advocate later assigned its commission rights under the exclusive listing agreement to AAI.

In 2007, Holdings went bankrupt. Holdings retained title to Ridgewalk Development, but a new company, RPI, was formed to operate Holdings as part of the Chapter 11 restructuring. In 2012, RPI took out a substantial loan from Horizon Group Properties, which over time acquired a controlling interest in the Defendants.

According to the Plaintiffs, in 2013, a local broker approached Butler about the possibility of Costco buying a portion of the Ridgewalk Development and building a store there. In early 2014, Butler contacted a local real estate developer, Jeff Fuqua,

---

[1] See *Yash Solutions v. New York Global Consultants Corp.*, 352 Ga. App. 127, 138-139 (2) (834 SE2d 126) (2019).

who had prior experience with Costco-anchored developments. After a period of negotiations, Fuqua signed a non-binding letter of intent outlining a deal in which he would help Costco purchase and develop the property. In April 2014, Horizon (which now controlled RPI/Holdings) proposed a modification to the deal that would require Butler to waive the Plaintiffs' brokerage commission. Butler refused.

According to the Plaintiffs, Horizon began freezing Butler out of the deal in the summer of 2014 by preventing him from participating in further Fuqua/Costco negotiations. In August 2015, Fuqua abandoned the deal. In October 2015, Horizon and Costco entered into a binding purchase agreement, and the transaction was finalized in 2017. Neither Horizon nor the Defendants ever paid any brokerage commissions in connection with the sale.

The Plaintiffs filed suit to recover a brokerage commission under theories of promissory estoppel and quantum meruit. The Defendants sought summary judgment on these claims on the ground that the Plaintiffs were not entitled to a commission because they were not the "procuring cause" of the Costco deal. The Defendants also argued that the Plaintiffs were ineligible for commissions because their brokerage licenses had lapsed before the October 2015 contract was signed.

The trial court denied the Defendants' summary judgment motion. The court rejected the Defendants' "procuring cause" argument, finding that "[a] question of fact exist[ed] as to whether Mr. Butler, Advocate, and/or AAI would have continued to negotiate and arrange for Costco's purchase of property in the Ridgewalk Development but for Horizon's interference." The court did not address the Defendants' lapsed-licenses argument. The trial court certified its order for immediate review, and we granted the Defendants' application for interlocutory appeal.

"This Court reviews de novo a grant or denial of summary judgment, viewing the evidence and all reasonable conclusions and inferences drawn from it in the light most favorable to the nonmovant. Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law."[2] Further, "the interpretation of a statute is a question of law, which is reviewed de novo on appeal."[3] With these guiding principles in mind, we turn now to the parties' claims of error.

---

[2] *Five Star Athlete Mgmt. v. Davis*, 355 Ga. App. 774, 775 (845 SE2d 754) (2020) (citations and punctuation omitted).

[3] *Harris v. Mahone*, 340 Ga. App. 415, 417 (1) (797 SE2d 688) (2017) (punctuation and footnote omitted).

4

1. In Case No. A20A1968, the Defendants argue that the trial court erred in denying their motion for summary judgment because Georgia law bars brokers from recovering commissions if they were unlicensed when their cause of action arose. We agree.

Georgia's rules governing real estate brokers exist "to provide public protection through the regulation of the activities of the brokers."[4] One of these rules is that a broker may not bring an action to collect a commission without alleging and proving that he and anyone acting on his behalf "was duly licensed in Georgia *at the time the alleged cause of action arose*."[5] This principle applies equally to quasi-contractual claims.[6]

---

[4] *Northside Realty Assoc. v. MPI Corp.*, 245 Ga. 321, 322 (265 SE2d 11) (1980).

[5] OCGA § 43-40-24 (a) & (b) (emphasis supplied); see also *Johnson v. Oriental Weavers Rug Mfg. Co.*, 241 Ga. App. 15 (525 SE2d 738) (1999) ("A person doing business in Georgia without the requisite real estate license has no standing to sue for commissions allegedly earned.").

[6] See *D.L. Stokes & Co. v. McCoy*, 212 Ga. 78, 78-79 (2) (90 SE2d 404) (1955).

Thus, the Plaintiffs were entitled to recover unpaid commissions only if they (and Butler, as their agent) were duly licensed when their cause of action arose.[7] The issue in this case is when the Plaintiffs' cause of action arose. The Plaintiffs maintain that their cause of action arose when the Defendants began excluding them from the Fuqua/Costco negotiations in the summer of 2014 — while they and Butler still had active licenses.[8] The Defendants, on the other hand, argue that the Plaintiffs' cause of action arose, at the earliest, in October 2015 when Costco signed a binding purchase agreement with Holdings — at which point the brokerage licenses of the Plaintiffs and Butler had lapsed.

A broker's commission is earned "when, during the agency, he finds a purchaser who is ready, able, and willing to buy and who actually offers to buy on the terms stipulated by the owner."[9] Accordingly, the Supreme Court of Georgia has held

---

[7] See *Northside Realty*, 245 Ga. at 322; *Bryan v. Brown Childs Realty Co.*, 236 Ga. App. 739, 740 (1) (513 SE2d 271) (1999).

[8] The evidence is undisputed that Advocate's license lapsed on November 1, 2014; Butler's license lapsed in "mid 2015"; and AAI's license lapsed on September 1, 2015.

[9] OCGA § 10-6-32; see also *Carroll v. Harry Norman, Inc.*, 198 Ga. App. 614, 615 (1) (402 SE2d 357) (1991) ("In a suit for commissions the burden of showing all the requirements is on the broker. The sale need not actually occur if the parties entered into a binding and enforceable agreement.") (citations omitted).

that a real estate broker who did not obtain a brokerage license until after the purchase contract was signed had no right to recover the commission specified in the contract because his cause of action arose when the contract was signed.[10] Thus, the cause of action in this case arose when Costco signed a binding contract to buy property in Ridgewalk Development.

The Plaintiffs' reliance on our decision in *Bryan v. Brown Childs Realty Co.*[11] is misplaced. In that case, a real estate broker entered into a commission agreement with a seller in August 1992, when the broker's license was inactive.[12] The seller sold the property in March 1996, and the broker reactivated his license in June 1996.[13] We held that the earliest date upon which the cause of action could be deemed to have arisen was November 1996, when the defendant repudiated the 1992 contract and refused to pay the brokerage commission.[14]

---

[10] *Northside Realty*, 245 Ga. at 321-323.

[11] 236 Ga. App. 739.

[12] Id.

[13] Id. at 739-740 (1).

[14] Id. at 741 (1).

7

Here, although the Plaintiffs argue that the Defendants "repudiated" their exclusive listing agreement in the summer of 2014, they had no claim for unpaid commissions until a binding agreement for the sale of the property was actually executed more than a year later, in October 2015.[15] Under *Northside Realty*, the Plaintiffs' cause of action arose when the purchase agreement was executed. And, under *Bryan*, their cause of action arose later still — when the Defendants refused to pay their commission. *Bryan* does not support the Plaintiffs' argument that a broker's cause of action can arise *before* a purchase agreement is signed (i.e., *before* a commission is earned). Because the Plaintiffs and Butler were not licensed when the Costco-Holdings agreement was signed, or at any point thereafter, their claims are barred.[16]

2. Based on our holding in Division 1, supra, we need not reach the Defendants' alternate argument that the trial court erred in finding that a question of fact existed as to whether the Plaintiffs were the "procuring cause" of the sale.

3. In related claims of error in the cross-appeal (Case No. A20A1969), the Plaintiffs argue that the trial court erred in finding that the summary proceeding of

[15] See *Carroll*, 198 Ga. App. at 615 (1).

[16] See OCGA § 43-40-24 (a) & (b); *Johnson*, 241 Ga. App. at 15.

8

OCGA § 14-11-313 (3) only applied where it was undisputed that the party seeking an inspection was still a member of the LLC at issue, and that the court erred in not finding that Advocate was a member of RPI.

OCGA § 14-11-313 (3) permits a "member" of an LLC demanding an inspection of the LLC's books and records to apply to superior court for an order directing the LLC to show cause why an inspection should not be permitted. "The court shall hear the parties summarily, by affidavit or otherwise, and if the [LLC] fails to establish that the applicant is not entitled to such inspection, the court shall grant an order permitting such inspection[.]"[17]

"As used in [the Georgia Limited Liability Company Act[18]], unless the context otherwise requires, the term: '[m]ember' means a person who has been admitted to a limited liability company as a member as provided in Code Section 14-11-505 and who has not ceased to be a member as provided in Code Section 14-11-601 or 14-11-601.1."[19]

---

[17] OCGA § 14-11-313 (3).

[18] OCGA § 14-11-100 et seq.

[19] OCGA § 14-11-101 (16).

Thus, under the plain language of the statute,[20] only a current member of the LLC may avail itself of the summary procedures for inspecting an LLC's books and records. Here, Advocate filed a motion for inspection pursuant to OCGA § 14-11-313 (3). The Defendants responded, arguing that Advocate had assigned away any interest in RPI in 2014 (which Advocate disputed in its motion) and was thus no longer a member entitled to inspect anything under OCGA § 14-11-313 (3).

The trial court denied the motion without prejudice, finding that the summary proceeding of OCGA § 14-11-313 (3) "only applies to situations where it is undisputed that the party seeking an inspection is still a member of the LLC at issue." The court found that "it remain[ed] disputed as to whether or not Advocate retain[ed] a membership interest after it and Butler pledged their 'interest' as part of the 2009 Loan." The court thus did "not reach the issue as to whether or not Advocate [was] in fact a member, only that it [was] not entitled to use the summary process . . . when its membership interest remain[ed] in dispute."

---

[20] *Mannato v. SunTrust Banks*, 308 Ga. App. 691, 692 (708 SE2d 611) (2011) ("[W]e apply the fundamental rules of statutory construction that require us to construe a statute according to its terms, to give words their plain and ordinary meaning, and to avoid a construction that makes some language mere surplusage. At the same time, we must seek to effectuate the intent of the legislature.") (citation and punctuation omitted).

10

Based on the plain language of the statute defining "member" as a current member, the trial court did not err in finding that a factual dispute existed regarding membership and that Advocate was not entitled to avail itself of the summary procedures available to a "member" of an LLC. For example, although the Plaintiffs argue that there was no meeting of the minds regarding the material terms of any assignment of its membership interest, RPI's designated Rule 30 (b) (6)[21] representative testified that Butler had in fact executed the original assignment. Thus, the trial court did not err in denying without prejudice Advocate's motion for inspection.

*Judgment affirmed in Case No. A20A1969. Judgment reversed in Case No. A20A1968. Markle and Colvin, JJ., concur.*

---

[21] See OCGA § 9-11-30 (b) (6).

11