**SECOND DIVISION**
**MARKLE, J.,**
**LAND and DAVIS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 24, 2025**

# In the Court of Appeals of Georgia

A24A1212. OLD REPUBLIC SURETY COMPANY v. GLYNN COUNTY et al.

MARKLE, Judge.

This appeal requires us to interpret the various statutory provisions relating to public official bonds. After Glynn County ("the County") discovered a superior court employee had embezzled funds, the County filed a demand for payment from Old Republic Surety Company under two public official bonds naming the superior court clerk as the principal. Old Republic denied coverage, arguing the demand was untimely under the applicable statute of limitation and that the County had not shown it met the conditions for payment. The County then filed suit and, following cross-motions for summary judgment, the trial court granted summary judgment to the County and awarded Glynn County over $339,000 plus pre-judgment interest. Old

Republic now appeals, arguing that (1) it was entitled to summary judgment because (a) the statute of limitation found in OCGA § 45-8-9 applied, rather than the 20-year period for documents under seal, and (b) the County failed to satisfy the conditions of OCGA § 45-4-24 (b), or at least there was a factual question regarding those conditions; and (2) the trial court erred by awarding pre-judgment interest. For the reasons that follow, we conclude that the claims for payment under the bonds were barred by the statute of limitation. We, therefore, reverse the trial court's order granting summary judgment to the County, denying Old Republic's motion for summary judgment, and awarding interest.[1]

> Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. In reviewing the grant or denial of a motion for summary judgment, we apply a de novo standard of review, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

---

[1]We have circulated this decision among all nondisqualified judges of the Court to consider whether this case should be passed upon by all members of the Court. Fewer than the required number of judges voted in favor of a hearing en banc on the question of disapproving *Washburn v. Foster*, 87 Ga. App. 132 (73 SE2d 240) (1952).

(Citation omitted.) *D'Elia v. Phillips Edison & Co., Ltd.*, 354 Ga. App. 696, 697 (839 SE2d 721) (2020).

The relevant facts are not in dispute. The record shows that Lola Jamsky was the clerk of the Superior Court of Glynn County at all relevant times, and she also acted as the child support receiver. Between 2007 and 2012, Jamsky was the principal for two bonds on which Old Republic was the surety, a Superior Court Clerk bond ("Clerk bond") and a Child Support Receiver bond ("Receiver bond"), indemnifying the County, as obligee, from any losses caused by Jamsky's misconduct. Each bond covered losses up to $100,000 per year.

In 2008, Jamsky hired Larry Morten as the clerk's office bookkeeper. Jamsky gave Morten unfettered discretion to manage office funds without any policies or procedures in place, leaving him largely unsupervised. Over the next few years, Morten was able to steal hundreds of thousands of dollars from the clerk's office.

During the period of Morten's employment, the County's financial auditors would meet with Jamsky to discuss the results of their annual audits, noting concerns about the Clerk's office bank accounts, but Jamsky took few corrective measures. Additionally, when other staff members expressed concerns over banking issues,

Jamsky told them not to worry about it and to mind their own business. And when Jamsky learned there were shortages in the child support receiver funds, she wrote checks from other court accounts to cover the shortfall. In 2014, when Jamsky learned that Morten was embezzling funds, she fired him. Morten was ultimately prosecuted and convicted for his thefts.

In March 2017, the County notified Old Republic it had sustained a loss, and that it was conducting an audit to determine the extent and cause. Old Republic opened claims for each bond and instructed the County to provide its written allegations with documentation. The County hired an accounting firm to assess its loss, and in May 2019, the County filed its formal claims for payment under the bonds.[2]

Old Republic denied the claims on the grounds that the six-year statute of limitation applicable to breach of contract claims had expired, and there was no coverage given the lack of evidence that Jamsky acted dishonestly or that she had any actual knowledge of the theft.[3]

---

[2] Jamsky died in 2019.

[3] The County was able to partially collect on separate bonds indemnifying it for employee theft, and Morten was ordered to make restitution as part of his sentence.

The County then filed suit for payment on the bonds and for breach of contract, seeking bad faith damages and pre-judgment interest. In its answer, Old Republic initially asserted a statute of limitation defense, applying the limitation period applicable to contracts, but later withdrew that defense in a supplemental interrogatory response and during its representative's deposition because the bonds were filed under seal.

Following extensive discovery, both sides filed motions for summary judgment. Old Republic later filed a supplemental motion, asserting a new statute of limitation defense based upon OCGA § 45-8-9, which provides that an action against a surety on a public official bond must be made within three years from the date the cause of action accrues. It then amended its answer and interrogatories to include this new statute of limitation defense.

The trial court granted the County's motion, finding (1) Jamsky did not fulfill her duties to faithfully account for the money, as required under the statute applicable to Clerk bonds, OCGA § 15-6-83; (2) there was no additional requirement that Jamsky act honestly in order for Old Republic to avoid liability for payment; (3) the additional requirement that the principal have knowledge of the acts, as set forth in OCGA § 45-

4-24 (b),[4] did not apply to the Clerk bonds; (4) to the extent OCGA § 45-4-24 (b) could apply to the Receiver bonds, the requirements were met because the "act complained of" was Jamsky's breach of her duties and not Morten's defalcation; and (5) the three-year limitation period in OCGA § 45-8-9 did not apply to the Receiver bonds because the child support receiver was not collecting and disbursing public funds on behalf of the State. Accordingly, the trial court awarded the County over

---

[4] OCGA § 45-4-24 (a) (4) provides "[e]very official bond executed under this chapter is obligatory on the principal and sureties thereon: . . . . For the use and benefit of every person who is injured, either by any wrongful act committed under color of his office or by his failure to perform or by the improper or neglectful performance of those duties imposed by law." However,

> No claim or cause of action shall exist against the bond, the surety, or the principal, and no claim or cause of action for indemnification by the surety against the principal shall exist, unless one of the following conditions exists: (1) The principal personally benefits financially from the act complained of; or (2) The principal was personally aware of and had actual knowledge of the act complained of; had actual knowledge that the act was illegal, contrary to law, or the breach of a duty imposed by law; and either acted to cause or failed to prevent the act complained of.

OCGA § 45-4-24 (b).

6

$339,000 on the bonds. It further awarded interest from the date of the County's demand under OCGA § 45-8-7. Old Republic now appeals.

1. Old Republic argues that the trial court erred by granting summary judgment to the County, and denying its motion for summary judgment, because the three-year statute of limitation in OCGA § 45-8-9 applies to both bonds. Old Republic further argues that the County's complaint seeking payment under the bonds was outside the three-year limitation period because the cause of action accrued at the time Jamsky breached her duties. In response, the County contends that Old Republic waived its statute of limitation argument. We conclude that Old Republic did not waive this defense and the proper statute of limitation is three years under OCGA § 45-8-9.

(a) *Whether Old Republic waived the statute of limitation defense*.

Before we turn to the merits of whether the three-year limitation period under OCGA § 45-8-9 or the twenty-year period provided by OCGA § 9-3-23 for bonds under seal applies, we must first consider the County's claim that Old Republic waived any limitation defense. We conclude that it did not.

Although the trial court did not explicitly address the waiver argument, it was raised and argued by both sides during summary judgment proceedings, and the trial

7

court implicitly rejected it in its order. See *Tyler v. Thompson*, 308 Ga. App. 221, 223 (2) (b) (707 SE2d 137) (2011) (finding that "it is presumed that the court implicitly denied . . . motions to compel [when it granted] summary judgment") (punctuation omitted). Having now considered the argument, we conclude that Old Republic did not waive its statute of limitation defense. It is well-settled that a party can raise a statute of limitation defense in a motion for summary judgment. *DirecTV v. White*, 355 Ga. App. 404, 408-409 (1) (844 SE2d 289) (2020). It can also raise the defense by amending its answer prior to a ruling on a pending motion for summary judgment. *Spafford v. Maseroni*, 186 Ga. App. 290, 291 (367 SE2d 102) (1988) (physical precedent only). Here, Old Republic filed an amended answer to raise the new defense, it filed supplemental interrogatory responses, and it argued the defense at summary judgment. Thus, the issue was properly before the trial court.[5]

---

[5] The County cites to *Anziano v. Appalachee Enterprises*, 208 Ga. App. 760, 762 (3) (432 SE2d 117) (1993), for the proposition that Old Republic could not re-assert its defense after it was withdrawn during the deposition. That case is distinguishable, however, because there is no evidence that the defendant in that case sought to raise a new defense by amending its answer and moving for summary judgment on that ground. Here, Old Republic raised a new statute of limitation defense following its withdrawal of a different defense. The same distinction is true of the County's reliance on *Memar v. Styblo*, 293 Ga. App. 528, 529, n. 3 (667 SE2d 388) (2008). And, *Legacy Academy v. Mamilove, LLC*, 328 Ga. App. 775, 780 (1) (761 SE2d 880) (2014), reversed in part on other grounds by *Legacy Academy v. Mamilove, LLC*, 297 Ga. 15

Additionally, although Georgia law allows a party to rely on admissions made in a pleading, interrogatory responses and deposition testimony are not pleadings. See OCGA § 9-11-36 (b) ("Any matter admitted under this Code section is conclusively established unless the court, on motion, permits withdrawal or amendment of the admission."); *Anderson v. Kaye*, 371 Ga. App. 626, 629 (1) (901 SE2d 765) (2024); *Walker v. Ace Auto Sales & Leasing*, 294 Ga. App. 267, 268 (1) (668 SE2d 877) (2008) (deposition testimony was not binding admission because "the rule as to admissions in judicio does not apply to opinions or legal conclusions"). As such, the County cannot rely on the interrogatory responses or deposition testimony regarding the statute of limitation defense to show waiver.[6] Accordingly, we conclude Old Republic

---

(771 SE2d 868) (2015), is distinguishable as well because that case involved the withdrawal of the defense at trial.

[6] Moreover, there was no prejudice from allowing Old Republic to raise a new statute of limitation defense in its motion for summary judgment. The County had notice of, and was able to respond to, the argument and, as it was purely a legal issue, there was no need for additional discovery related to the new defense. Cf. *Popham v. Landmark American Ins. Co.*, 340 Ga. App. 603, 610-611 (3) (798 SE2d 257) (2017) (no prejudice from allowing defendant to amend answer to raise statute of limitation defense after entry of pre-trial order where plaintiff had notice court would consider issue).

has not waived the argument that a three-year statute of limitation applied under OCGA § 45-8-9.

(b) *Whether the three-year or twenty-year limitation period applied.*

As we consider which statute of limitation applied, we are mindful that there are two types of statutory bonds at issue. We address each individually.

(i) *The Clerk bonds.*

Under OCGA § 15-6-83, "[i]f any of the clerks of the superior courts receive any money on any action or judgment from their courts, or otherwise, and do not faithfully account for it, they are liable to rule as sheriffs are, and they and their sureties are likewise liable on their official bonds."[7] By statute, the clerk's duties include, among other things, receiving payment of legal fees for transcripts. See OCGA § 15-6-61 (a) (8) (2008). And the record evidence showed that the clerk's office also collected recording fees and fees from real estate closings and for drug court.

Section 15-6-83 provides no further guidance on the application of the Clerk bonds or the appropriate statute of limitations. But, our legislature has enacted other

---

[7] The statute applicable to sheriff's bonds is OCGA § 15-16-5, and it contains similar language to OCGA § 15-6-83.

statutes applicable to public official bonds.[8] Specifically, OCGA § 45-4-24 imposes liability for "every official bond executed under [Chapter 45]," and OCGA § 45-4-30 indicates that Chapter 45 applies to "the official bonds of all public officers of this state[.]"

Chapter 45 also provides for a specific limitation period:

No action on the bond of any collecting officer, officer to hold public funds, bank, or depository shall be maintained unless the action or proceeding is begun within six years from the date the alleged cause of action accrued; *nor shall any action be maintained against any surety because of an alleged breach of the bond, unless, within three years from the date the alleged cause of action accrues, an action is begun against the surety[.]*

(Emphasis supplied.) OCGA § 45-8-9. "Collecting officer" is defined as "any person who is either generally or specifically elected, appointed, or employed, in whole or in part, to collect any tax, revenue, or other moneys on behalf of the state or any of its political subdivisions or on behalf of any board, commission, bureau, or department thereof." OCGA § 45-8-1 (1). "Officer to hold public funds" is defined as

---

[8] Our rules of statutory construction require that we "construe a statute according to its terms, to give words their plain and ordinary meaning, and to avoid a construction that makes some language mere surplusage. At the same time, we must seek to effectuate the intent of the legislature." (Citation omitted.) *Mannato v. SunTrust Banks*, 308 Ga. App. 691, 692 (708 SE2d 611) (2011).

not only the state treasurer, municipality or county treasurers, the State School Superintendent, municipality or county school superintendents, and treasurers of school districts, but also every other person, by whatever name or title called, who shall be either generally or specially elected, appointed, or employed with the duty, in whole or in part, to receive, hold, or disburse any public money or revenue on behalf of the state or any of its political subdivisions or on behalf of any board, commission, bureau, or department.

OCGA § 45-8-1 (9).

Old Republic contends that the three-year limitation period in OCGA § 45-8-9 applies because the statute covers all public official bonds and Jamsky was both a "collecting officer" and an "officer to hold public funds." In support, Old Republic points to *U. S. Fidelity & Guaranty Co. v. Toombs County*, 187 Ga. 544 (1 SE2d 411) (1939). The County argues that OCGA § 45-8-9 does not apply because the clerk is not a "collecting officer" or "officer to hold public funds" under the statute.[9] It

---

[9] The County cites *Sirmans v. Sirmans*, 222 Ga. 202, 203 (149 SE2d 101) (1966), for the proposition that superior court clerks are not "collecting officers." *Sirmans* relied on language in *Lewis v. Smith*, 99 Ga. 603, 604 (1-2) (27 SE 162) (1896), in which our Supreme Court found superior court clerks were not "collecting officers" because they did not levy executions, enforce the process of payment, or make returns. Notably, however, the statutory definition, which was enacted after the *Sirmans* decision, specifies that a "collecting officer" is one who collects any money on behalf of the state or any political subdivision, and the role of superior court clerks involves

contends *Washburn v. Foster*, 87 Ga. App. 132 (73 SE2d 240) (1952), controls the outcome of this case.

In *U. S. Fidelity & Guaranty Co.*, the county sheriff was found to have improperly collected funds, and when he refused to return the money, the county obtained an order against the sheriff and his surety. 187 Ga. at 545-546. The surety filed a petition to cancel the judgment, arguing that the statute of limitation had expired, as more than three years had passed. Id. at 546. The trial court rejected the surety's claim, but the Supreme Court of Georgia concluded that the action was time barred under the statute now codified at OCGA § 45-8-9. Id. at 548-549 (3); see also OCGA § 45-8-9 (formerly § 89-832). The Court then explained that, because both the limitation period for bonds under seal and for public official bonds were legislative enactments, to the extent there was a conflict between the two, the more recent statute controlled. *U. S. Fidelity & Guar. Co.*, 187 Ga. at 551 (5). And the more recent statute contained the three-year limitation period applicable to public official bonds. Id.; see also *Holcombe v. Gunby*, 241 Ga. 105, 106-107 (2) (243 SE2d 65) (1978)

---

such conduct. OCGA § 45-8-1 (1); see also OCGA § 15-6-60 (2), (4) (clerk has authority to collect fees and receive court costs). As a result, the clerk would qualify as both a "collecting officer" and an "officer to hold public funds." OCGA § 45-8-1 (1), (9).

(applying three-year statute of limitation as currently codified in OCGA § 45-8-9 to surety for probate judge's bond); *Laurens County v. Keen*, 214 Ga. 32, 38 (102 SE2d 697) (1958) (noting that the statute of limitations is three years for claims against the surety on the tax commissioner's official bond).

In *Washburn*, the sheriff improperly accepted a cash bond that he did not submit to the court clerk. 87 Ga. App. at 134. When the individual sought return of his money, he sued the sheriff and the surety. Id. at 135-136. This Court allowed the claim to proceed, noting that the statute of limitation was 20 years for bonds under seal "and there is no express statute providing for a different period of limitation of actions." Id. at 136.

Our rules of statutory construction instruct that a specific statute usually prevails over a general one, and that we must consider the context in which the statute appears. *North American Senior Benefits v. Wimmer*, 319 Ga. 641, 644 (2) (906 SE2d 373) (2024); *In re Estate of Barr*, 278 Ga. App. 837, 838 (630 SE2d 135) (2006). And, "a statute must be construed in relation to other statutes, and all statutes dealing with the same subject matter are construed together and harmonized wherever possible so

as to give effect to the legislative intent." (Citation omitted.) *CL SNF, LLC v. Fountain*, 312 Ga. 416, 418-419 (863 SE2d 116) (2021).

Given our rules of construction, and our Supreme Court's holdings in *U. S. Fidelity & Guaranty Co.*, and *Holcombe*, we must conclude that the three-year limitation period applies to the Clerk bonds at issue here. The three-year period appears in the statute specific to public official bonds, and thus it prevails over the general twenty-year period for bonds under seal. *In re Estate of Barr*, 278 Ga. App. at 838. Moreover, our Supreme Court applied the three-year period to a sheriff's bond, explaining that, to the extent that limitation period conflicted with the twenty-year period for bonds under seal, the three-year period controlled. *U. S. Fidelity & Guar. Co.*, 187 Ga. at 549 (3), 551 (5); see also *Holcombe*, 241 Ga. at 106-107 (2). And Chapter 15 of our Code provides for the liability on both sheriff's bonds and clerk's bonds. See OCGA §§ 15-6-83; 15-16-5. Thus, the same limitation period applies here.

Moreover, it is well-settled that we have no authority to ignore or overturn decisions by our Supreme Court. See *Chin Pak v. Ga. Dept. of Behavioral Health & Developmental Disabilities*, 317 Ga. App. 486, 488 (731 SE2d 384) (2012) ("this Court has no authority to overrule or modify a decision made by the Georgia Supreme

Court"); Ga. Const. of 1983, Art. VI, Sec. VI, Par. VI. Accordingly, we conclude that the three-year period applied to the Clerk bonds. To the extent that *Washburn* conflicts with precedent from our Supreme Court, it is disapproved.

(ii) *The Receiver bonds.*

Old Republic next contends that the three-year limitation period also applies to the Receiver bonds because child support receivers are "collecting officers" and "officers to hold public funds" under the statute. We agree.

Child support receivers, like superior court clerks, are obligated to execute bonds. See OCGA § 15-15-3. Thus, the question is whether child support receivers are "collecting officers" or "officers to hold public funds" under OCGA § 45-8-9. As noted, these terms are defined to include persons employed to collect or hold money on behalf of a political subdivision of the State. See OCGA § 45-8-1 (1), (9). Among the receiver's duties is to "collect all child support payments and such other payments of support as are established by judicial order or by a written agreement of a parent or guardian to furnish support to his minor child, the terms of which specify that support payments are to be paid through the child support receiver[.]" OCGA § 15-15-4 (1).

The child support receiver is statutorily authorized to charge a fee, which is deposited into the county's funds, and is required to assess and "collect from the paying party all costs of court and service fees of the sheriff in any action initiated by the state," which costs are paid to the clerk of the superior court. OCGA § 15-15-5 (a), (b). These duties qualify the child support receiver as a "collecting officer" and an "officer to hold public funds" as those terms are defined. See OCGA § 45-8-1 (1), (9). Thus, OCGA § 45-8-9 applies to the Receiver bonds.[10]

(c) *Whether the demand for payment was timely made.*

Having concluded that the three-year limitation period applied to both bonds, we next consider whether the County timely initiated its action for payment under the bonds. Old Republic argues that the action is untimely because it was filed nine years after the theft occurred and six years after the County first became aware of the loss.

---

[10] The County contends that the receiver is not a "collecting officer" because none of these fees or collection of costs appear in the statute setting out the receiver's duties. See OCGA § 15-15-4. But that argument ignores that OCGA § 15-15-5 uses mandatory language, obligating the receiver to collect funds to be deposited into the clerk's accounts. See *Hall County Bd. of Tax Assessors v. Westrec Properties*, 303 Ga. 69, 75 (3) (809 SE2d 780) (2018) ("The word 'shall' is generally construed as a word of command. The import of the language is mandatory.") (citation omitted); *Bridges v. Collins-Hooten*, 339 Ga. App. 756, 762 (3) (792 SE2d 721) (2016) (statute's use of "shall" indicated mandatory conduct).

It further contends the limitation period was not tolled due to Jamsky's behavior because there is no evidence Jamsky acted with fraudulent intent, and the County knew of the theft in 2014 regardless of Jamsky's conduct. The County responds that the action was timely because the period did not begin to run until it learned of Jamsky's breach of her duties, which was the triggering event. It explains that it did not learn of Jamsky's concealment of the loss of funds until 2018, and thus Jamsky's own fraud tolled the limitation period.

> Ordinarily a right of action has its inception from the time there has been a breach of duty. When, however, the basis of the action is actual fraud involving moral turpitude, the statute of limitation is tolled, and does not begin to run until such fraud is discovered, or could have been discovered by the exercise of ordinary and reasonable diligence.

(Citation omitted.) *Employers Liability Assurance Corp. v. Lewis*, 101 Ga. App. 802, 807 (1) (115 SE2d 387) (1960).

"Whether a statute of limitation bars an action generally is a mixed question of law and fact," but if the facts are undisputed, the trial court may determine tolling as a matter of law. *Toliver v. Dawson*, 370 Ga. App. 451, 452 (896 SE2d 714) (2023). The County bears the burden of showing the limitation period was tolled. See id.

Here, the County identifies Jamsky's breach of duty as the triggering event, and it contends that it did not know of her breach until it finished the audits in 2018. There is no dispute that the County learned of the theft in November 2014; it notified Old Republic in March 2017 that it had sustained a loss and was conducting an audit to determine the extent; it made a formal claim in May 2019; and it did not file suit until September 2020. There is also no dispute that the County had annual financial audits, and each time, the audits identified concerns regarding the child support receiver accounts. Jamsky was informed of the audit results on each occasion. Those audit results also noted that the clerk should have investigated discrepancies, supervised financial management, segregated financial duties, and instituted policies and procedures that could have reduced the risk of mismanagement. The County's own representative admitted that Jamsky should have known Morten was stealing or, at a minimum, she had enough information that she should have investigated. Other superior court employees acknowledged that Jamsky knew there were problems and failed to investigate. And the finance manager at the time Jamsky was in office confirmed that she reviewed the annual financial reports and audits with Jamsky between 2008 and 2013.

We agree with the County that the triggering event was its knowledge of Jamsky's conduct. Notably, the bonds at issue arise from the statutory obligations of her roles as the clerk and the child support receiver. OCGA §§ 15-5-3; 15-6-83; 45-4-24; 45-4-30 Specifically, the bonds provide coverage for the principal's conduct — in this case, Jamsky as the clerk and the child support receiver — and the failure to perform those duties. And under OCGA § 15-6-83, the clerk must "faithfully account" for any money received. Accordingly, the relevant inquiry is when did the County know of Jamsky's misconduct. Our Supreme Court addressed this precise question in *U. S. Fidelity & Guaranty Co.*, concluding that the statute of limitation begins to run when the county knew of, or could have discovered through reasonable diligence, the breach of duty. 187 Ga. at 553-555 (7).

Here, the County was aware of both the theft and the financial reports identifying Jamsky's lack of supervision over the money management in her office no later than 2014. However, the record also shows that Jamsky moved money between accounts to cover missing funds. The County contends that Jamsky's actions amount to fraud and concealment that would toll the statute of limitation. Even if we were to consider Jamsky's conduct as fraud and concealment, rather than negligent

20

mismanagement, it is clear that, for several years prior to the time it filed suit, the County was aware that Jamsky was mishandling money; the County was aware she had not made necessary changes to avoid discrepancies and protect the funds; and that her conduct had enabled the theft. See *Hamburger v. PFM Capital Mgmt.*, 286 Ga. App. 382, 388-389 (4) (649 SE2d 779) (2007) (where plaintiff received statements about her accounts showing mismanagement, and record demonstrated she was concerned about how her accounts performed, plaintiff could not show fraud that tolled limitation period). Notably, the County's own representative admitted that the financial audits would have alerted Jamsky of the problem, Those same audits should have given the County notice of Jamsky's breach of her duties as soon as it discovered the theft in 2014. See *Smith v. Suntrust Bank*, 325 Ga. App. 531, 544 (2) (b) (754 SE2d 117) (2014) (limitation period did not toll where party failed to exercise due diligence to discover breach); *Hendry v. Wells*, 286 Ga. App. 774, 780–781 (1) (650 SE2d 338) (2007) (limitation period did not toll due to fraud even though defendants sent misleading information to plaintiff because plaintiff had a copy of their agreement and could have known).

Accordingly, we conclude that the County had the necessary information prior to March 2017 when it notified Old Republic of the loss. The complaint seeking payment on the bonds, filed more than three years later, in September 2020, was barred by the statute of limitation. Therefore, as to the County's action on the bonds, we must reverse the trial court's order granting summary judgment to the County, denying Old Republic's motion for summary judgment, and awarding interest on the amount of the bonds.

2. Because we conclude that the action on the bonds was barred by the statute of limitation, we need not consider Old Republic's other claims of error.

*Judgment reversed. Land and Davis, JJ., concur.*